# SINGLE/MULTI FAMILY PURCHASE AND SALES AGREEMENT
## Rhode Island Association of REALTORS® - Standard Form

COPY

**1. SALES AGREEMENT** ("Agreement") made between James H. Reyelt ("Seller")
whose mailing address is 10-12 Payne Rd. Barrington, RI Zip code 02806
and William B. Danzell and Louisa F. Beenker Danzell ("Buyer")
whose mailing address is 65 Brams Point Rd. Hilton Head, SC Zip code 29926
The Seller agrees to SELL and the Buyer to BUY, upon the price and terms below, the following property (the "Property"):
Property Address 10 - 12 PAYNE RD BARRINGTON, RI 02806
Assessor's Plat 7 Lot 23 in the City/Town of BARRINGTON, State of Rhode Island, Zip code 02806

**2. Date of this Agreement:** The Date of this Agreement shall be the later of: (a) the date on which Buyer signs this Agreement, or (b) the date on which Seller signs this Agreement, as set forth by the Buyer's and Seller's signatures below.

**3. Purchase Price:** The agreed Purchase Price for the Property One Million Four Hundred Twenty-five Thousand $1,425,000 — Dollars ("Purchase Price") of which
$10,500.00 has been paid as a deposit upon the execution of this Agreement by Buyer in the form of a check, receipt of which is hereby acknowledged.
* $60,750.00 Additional Deposit to be paid on or before September 15, 2003
$1,353,750.00 Balance of Purchase Price
$1,425,000.00 TOTAL PURCHASE PRICE SEE RIDER "A" ATTACHED AND INCORPORATED HEREIN

**4. Closing Date/Place:** Closing is to be held on October 31, 2003 at 10:00 A.M. at the office of the Registry of Deeds in which the deed should by law be recorded or at such other time and place as may be agreed to by the parties. The balance of the Purchase Price shall be paid by cash, certified check, and/or bank check. Payment of the balance of the Purchase Price and delivery of deed shall occur at the closing. Buyer and Seller authorize the Closing Agent to release to Broker(s) signed copies of the closing statement(s).

* **5. Deposits:** All deposits and any additional deposit made hereunder (collectively, "Deposits") shall be held in an escrow account as required by Rhode Island General Laws 5-20.5-14(5), by the Principal Broker of Listing Company named below unless mutually agreed otherwise by Buyer and Seller, and, except as otherwise provided herein, shall be duly accounted for at the time of delivery of the deed and applied to the Purchase Price. The refunding of all Deposits shall be upon execution of a written release by Buyer and Seller and pursuant to Rule 7 of Commercial Licensing Regulation 11.

* **6. Deposit Disputes:** In the event of a dispute between the Seller and the Buyer as to any provisions of this Agreement or the performance thereof, the holder of said Deposits may retain all Deposits hereunder in said escrow account until the dispute is resolved by the parties, by binding settlement or court judgment, or may place the Deposits with a court of competent jurisdiction, or may release the Deposits upon execution of a written release by Buyer and Seller as permitted by the laws, rules and regulations of the State of Rhode Island; provided, however, that if the allocation of the Deposits remain in dispute 180 days from the date of the original deposit, the Principal Broker of Listing Company shall transfer the Deposits to the General Treasurer of Rhode Island pursuant to Rule 7 of Commercial Licensing Regulation 11.

**7. Waiver of Mortgage Contingency:** If initialed by Buyer, this Agreement is not contingent upon financing and Section 8 of this Agreement shall not apply. However, Buyer reserves the right to finance any portion of the Purchase Price. LD (Initials of Buyer)

**8. Mortgage Contingency:** Notwithstanding any other provisions of this Agreement, and, unless the Buyer waives this mortgage contingency in writing, this Agreement is subject to the issuance of a commitment letter by an institutional mortgage lender or mortgage broker ("Lender") to the Buyer not later than N/A, , ("Contingency Date") in which the Lender agrees to lend up to $ N/A at an initial rate of interest not to exceed N/A % per annum, for a term of at least N/A years, with a maximum of N/A points. The Buyer and Seller agree to the following conditions: SEE RIDER HJD under POA for Seller
(a) The Buyer must apply for such mortgage within N/A days after the Date of this Agreement. **If the Buyer fails to make formal application by said date, the Buyer shall be in default of this Agreement, shall forfeit all Deposits, and this Agreement shall be deemed null and void.**
The Buyer is to notify the Seller or Listing Agent of the identity of each Lender to whom the Buyer has made such application within four (4) days after the Date of the Buyer's application. The Buyer hereby authorizes the Seller and/or Listing Agent to contact any such Lender(s) to confirm the status of the Buyer's application.

BUYER'S INITIALS LD/WBD SELLER'S INITIALS ______ Copyright© 2002 Rhode Island Association of REALTORS® FORM # 1401 (R-101) Rev. 10/02



* Jacobi and Associates will hold the deposit in an interest bearing account. Interest to follow the deposit.

HJD under POA for Seller

EXHIBIT A

(b) Within four (4) days of receipt of a written commitment or denial for such mortgage, but in no event later than the Contingency Date above, the Buyer agrees to provide a copy of such commitment or denial to the Seller or Listing Agent.

(c) If the Buyer applies for a mortgage within the terms and amount set forth above and receives a written denial for such mortgage, then, upon providing a copy of the denial to the Seller or Listing Agent by the Contingency Date or extensions thereof, this Agreement shall be declared null and void and all Deposits made hereunder shall be refunded.

DSERO

(d) In the event the Buyer has received neither a commitment nor a denial for such mortgage by the Contingency Date, the Buyer shall, by the Contingency Date, and by written notice to the Seller or Listing Agent, request to extend the time by which a copy of the written commitment or denial must be provided, or waive the mortgage contingency clause by written notice. In response to the Buyer's request, the Seller may, by the Contingency Date, and by written agreement with the Buyer, extend the time by which a copy of the written commitment or denial must be provided. If the Seller does not extend the Contingency Date, this Agreement shall be null and void and all Deposits made hereunder shall be refunded unless the Buyer has waived the mortgage contingency in writing.

(e) In the event the Buyer has not provided a copy of the written commitment or denial for such mortgage and has not given written notice as specified in 8(d) to the Seller or Listing Agent by the Contingency Date or extensions thereof, then the Buyer shall be in default of this Agreement, shall forfeit all Deposits, and this Agreement shall be deemed null and void.

HJD under POA

(f) Nothing herein shall be deemed to limit the right of the Buyer to obtain a mortgage in a greater or lesser amount than set forth above, however, the contingency set forth in this Section 8 shall apply ONLY if the Buyer applies for a mortgage not greater than the amount set forth above.

**9. Insurance/Risk of Loss:** Seller shall keep the Property insured, at its expense, until the delivery of the deed against loss by fire, with Extended Coverage provisions in the amount of as currently insured.......................................... In case of any loss, the Seller shall pay over or assign to the Buyer upon payment of the balance of the Purchase Price all sums recovered on account of said insurance, or the Buyer may, at its option, terminate this Agreement and the Deposits shall be refunded to the Buyer, unless the Seller shall have restored the Property substantially to its former condition.

**10. Fixtures:** Included in this sale as part of the Property are the buildings, structures and improvements now thereon, and the fixtures belonging to the Seller and used in connection therewith, including, if any, all blinds, window shades, screens, screen doors, storm windows and doors, awnings, shutters, electric and other lighting fixtures, outside television antennas (including rotor and control), garage door openers and controls, flagpoles, fences, gates, trees, shrubs and plants in the yard, and if built in, air conditioning equipment, garbage disposals and dishwashers. (Any item deleted from this paragraph is not included in the sale.)

The following fixtures which are rented by the Seller are not included in the sale: N/A..........................................

Other items excluded from the sale: N/A..........................................

Tenant owned items excluded from the sale: #12 Payne: refrigerator and washer/dryer..........................................

**11. Title:** Seller covenants and warrants that it is the fee title owner of the Property and has the authority and capacity to enter into this Agreement and consummate the transaction contemplated herein. The Property is to be conveyed by a good and sufficient warranty..........................deed of the Seller, conveying a good, clear, insurable, and marketable title to the Property, free from all encumbrances, except as may be acceptable to Buyer, and Buyer's Lender, if any, and except easements, restrictions of record and municipal regulations, if any. Buyer may at its own expense conduct a title examination of the Property. Buyer shall notify Seller of any defects in title disclosed by such examination. If Seller is unable to remove such defects, Buyer shall have the option to: (a) accept such title as Seller is able to convey without abatement or reduction of the Purchase Price, or (b) cancel this Agreement and receive a return of all Deposits. To enable the Seller to make conveyance as provided in this Agreement, the Seller may, at the time of the delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interest, provided that all instruments to be obtained are recorded prior to recording the deed, except for any discharge of mortgage from an institutional lender which may be recorded subsequent to the deed.

BUYER'S INITIALS LD/WBM SELLER'S INITIALS HJD under POA Copyright© 2002 Rhode Island Association of REALTORS® FORM # 1401 (R-101) Rev. 10/02



**EXHIBIT A**

**12. Taxes, Adjustments, Other Assessments:**

(a) **Taxes:** Real estate taxes and fire district taxes are to be prorated on a calendar year basis, except in those towns in which taxes are prorated on a municipal year basis (e.g. Barrington, Jamestown, Middletown, Newport, Portsmouth, Woonsocket), with the Seller paying for the period unpaid to the date of delivery of the deed and the Buyer paying the balance of taxes due. All other taxes which are a lien upon the Property shall be paid by the Seller at the time of the delivery of the deed.

(b) **Adjustments:** Rents, fuels, water charges, association fees and sewerage charges shall be apportioned as of the date of the delivery of the deed.

(c) **Assessments:** All assessments constituting a lien on the Property which are payable over a period of more than one year shall be apportioned in such manner that Seller shall pay installments due during the municipal years prior to the year in which the deed is delivered; the installment due in that year shall be apportioned in the same manner as above provided for taxes and Buyer shall pay or assume the balance, except where local ordinances require otherwise.

**13. Buyer/Seller Information:**

(a) **Ordinances:** Buyers of real estate in the State of Rhode Island are legally obligated to comply with all local real estate ordinances; including, but not limited to, ordinances on the number of unrelated persons who may legally reside in a dwelling, as well as ordinances on the number of dwelling units permitted under the local zoning ordinances.

(b) **Wetlands:** The location of coastal wetlands, bays, fresh water wetlands, ponds, marshes, riverbanks or swamps, and the associated buffer areas may impact future Property development. If known, Seller must disclose to the Buyer any such determination on all or part of the land made by the Department of Environmental Management.

(c) **Radon Gas:** Radon has been determined to exist in the State of Rhode Island. Testing for the presence of radon in residential real estate prior to purchase is advisable.

(d) **Lead Contamination:** ***"Every Purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced Intelligence Quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The Seller of any interest in residential real property is required to provide the Buyer with any information on lead-based paint hazards from risk assessments or inspections in the Seller's possession and notify the Buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase."***

(e) **Private Well Water:** R.I.G.L. 5-20.8-12 gives buyers the right to test the water quality of a private well in accordance with regulations established by the RI Department of Health pursuant to R.I.G.L. 23-1-5.3.

(f) **Restrictions or Legislative/Governmental Action:** Buyer is responsible for investigating whether there are any restrictions or legislative/governmental actions, present or proposed, which affect or would affect the use of the Property.

**14. Additional Seller Obligations:**

(a) **Smoke/Carbon Monoxide Detectors:** Rhode Island law requires certain residential dwellings to be equipped with an approved smoke detector and carbon monoxide detector system. It is the responsibility of the Seller to deliver the Property at the closing in compliance with such law along with a smoke detector and carbon monoxide detector certificate dated no earlier than 60 days before the closing.

(b) **Non-Resident Withholding Tax:** If the Seller is not a resident of the State of Rhode Island or will not be a resident at the time of the closing, the Buyer must withhold six (6%) percent of the net proceeds to the Seller (9% if the Seller is a corporation), in accordance with R.I.G.L. Section 44-30-71.3, as may be amended from time to time, and pay such amount to the Division of Taxation as a non-resident withholding tax. In order to have such tax based on gain rather than net proceeds of sale, Seller must submit an election form to the Division of Taxation at least twenty (20) days prior to closing. Seller agrees to pay the entire amount of such tax found to be due at or after the closing, whether or not such tax was correctly calculated at the closing, it being understood that the tax shall not exceed the amount of net proceeds to Seller. This tax liability shall survive the transfer of title to the Property and shall be a lien against the Property.

(c) **Foreign Investment In Real Property Tax Act ("FIRPTA"):** The Seller represents that the Seller is not a foreign person or foreign corporation as defined in FIRPTA and, accordingly, that the Buyer will not be required to comply with the withholding requirements of FIRPTA at the closing.

BUYER'S INITIALS ______ SELLER'S INITIALS ______ with POA

Copyright© 2002 Rhode Island Association of REALTORS® FORM # 1401 (R-101) Rev. 10/02



**EXHIBIT A**

**15. Possession:** The Property is being sold in "AS IS" condition and Buyer represents that it has not relied on the oral representations of the Seller, or the Broker(s) or their agents as to the character or quality of the Property. Unless mutually agreed otherwise, full possession of the Property free of all tenants, occupants and personal possessions (except as provided below) is to be delivered to the Buyer broom clean and free of debris at the time of delivery of the deed. At closing, the Property is to be conveyed in the same condition in which it now is, except for reasonable use and wear and/or any improvements or repairs ~~required by~~ this Agreement. The Buyer shall be entitled to a re-inspection of the Property prior to the delivery of the deed in order to determine whether the condition of the Property complies with the terms of this paragraph.

**EXCEPTIONS:** NONE HG D under POA for Seller

**16. Assumption of Leases:** Notwithstanding anything to the contrary in Section 15 of this Agreement, it is understood and agreed that the Property will be conveyed subject to the leases/tenancies described below Reference attached License Agreement pertaining to 12 Payne Rd.

On the date of the closing, Seller shall deliver to the Buyer: (a) a copy of all existing, written leases, (b) all security deposits and advance rent, if any, held or received by Seller or its agent in connection with such leases, and (c) a letter to each tenant notifying them of a change in ownership and an address where subsequent rental payments are to be sent.

**17. Written Notice of Violations and Change In Ownership:** If there is any notice of violation order outstanding against the Property, Seller shall immediately provide written notice to the Buyer and each tenant of the Property with a true copy of any notice of violations or orders issued and notify the enforcing officer in writing of Seller's intent to transfer the property.

**18. Receipt and Acknowledgment of RI Disclosure Forms:** Buyer acknowledges that it received the following forms (unless exempted by law). **(Check all that apply)**

- x Rhode Island Real Estate Sales Disclosure Form prepared by the Seller
- x Agency Disclosure
- x Seller's Lead Disclosure

**19. Inspections:** Notwithstanding anything to the contrary in Section 15 of this Agreement, Buyer may, at the Buyer's expense, choose to have any or all of the following inspections conducted as part of this Sales Agreement. The Buyer shall have ten (10) calendar days from the date of this Agreement to conduct these inspections ("Inspection Period") or this contingency shall be deemed to be waived. If there is a delay in the receipt of the inspection report due solely to the inability of the inspector to complete the inspection, the Inspection Period shall be extended for a reasonable time, not to exceed seven (7) calendar days. If requested, the inspector shall provide the Buyer with an explanation of the delay which shall be made available to the Seller. Buyer authorizes release of all inspection reports to the Agent representing the Buyer.

**INSPECTIONS TO BE CONDUCTED:**

| | YES | NO | | YES | NO | | YES | NO |
|---|---|---|---|---|---|---|---|---|
| Pest Infestation | NONE | | Wetlands | NONE | | Physical/Mechanical | NONE | |
| Septic System | | | Hazardous Substances | | | Well Water | | |
| Flood Plain | | | Radon Gas | | | Lead Contamination | | |

Other...Property is being sold in "AS IS" condition

**NOTICE**: to waive lead and/or well water inspections, Buyer must initial below.

LD
Initials of Buyer — **Having been informed of a 10-day right to test/inspect for the presence of lead, the Buyer elects not to have any test(s)/inspection(s) for lead performed.**

LD
Initials of Buyer — **Having been informed of a 10-day right to test the water quality of a private well in accordance with RI Department of Health regulations, the Buyer elects not to have any water quality test(s) performed.**

LD
Initials of Buyer — **Buyer acknowledges that it has received a Seller's Lead Disclosure and a pamphlet "Protect Your Family from Lead in Your Home" and "What You Should Know About the RI Lead Law."**

**Additional Provisions:** ...

BUYER'S INITIALS LD SELLER'S INITIALS HGD under POA for Seller

Copyright© 2002 Rhode Island Association of REALTORS® FORM # 1401 (R-101) Rev. 10/02



**EXHIBIT A**

If any inspection by a recognized and reputable inspector or inspection company, performed within the Inspection Period, discloses any existing, substantial/materially deficient condition* which has not been disclosed to the Buyer prior to the execution of the Agreement, the Buyer, upon providing the inspection report verifying said existing, substantial/materially deficient condition*(s) to Seller within seven (7) days after Buyer has obtained a copy of said report (Buyer's receipt of said report shall be governed by Section 21 of this Agreement), may:

(a) Allow the Seller the opportunity to cure such deficient condition*(s) by providing a written list of those items Buyer requests Seller to correct, whereupon Seller shall be given seven (7) days after receipt of the report and request to notify, per Section 21, Buyer in writing if Seller agrees, at Seller's own expense, to correct the deficient condition*(s). Buyer and Seller should mutually agree prior to any work being performed what each other's obligations will be subsequent to such performance.

(b) If Seller does not so agree or perform, and the Buyer has not waived this contingency in writing, this Agreement shall be null and void and Deposits made hereunder shall be refunded, or;

(c) Terminate this Agreement by notifying the Seller in writing within seven (7) days of receipt of the inspection report, whereupon this Agreement shall be null and void and Deposits made hereunder shall be refunded.

(d) Buyer and Seller may agree to prorate the cost of correcting said existing, substantial/materially deficient condition*(s). Said corrections are to be performed by a recognized and reputable contractor to accepted industry standards or as otherwise mutually agreed.

Notwithstanding the foregoing, the Buyer may waive this contingency and accept the Property in "AS IS" condition.

(NPD) (D) Having been informed of the right to test/inspect, the Buyer elects not to have *any*
Initials of Buyer test(s)/inspection(s) performed.

*"**Deficient condition**" is defined as a structural, mechanical or other condition that would have a significant adverse effect on the value of the Property; that would significantly impair the health or safety of future occupants of the Property, or that, if not repaired, removed or replaced would significantly shorten or have a significant adverse effect on the expected normal life of the Property. Deficient condition does not include structural, mechanical or other conditions the nature and extent of which Buyer had actual knowledge or written notice before signing this Agreement.

**20. Further Assurances:** Each of the parties hereto agrees to execute and deliver such other documents, instruments, and affidavits as may reasonably be required to effect the transaction contemplated herein, including without limitation, any affidavits and agreements which may be required by the Lender or the title insurance company.

**21. Notices:** All notices as required in this Agreement shall be in writing. All notices are to be conveyed by mail, personal delivery, or fax. Notices shall be effective when postmarked, upon personal delivery, or upon fax transmittal date. Notices to the Seller shall be sent or delivered to the Seller at the address in Section 1 of this Agreement and the Listing Agent at the address below. Notices to the Buyer shall be sent or delivered to the address that appears in Section 1 of this Agreement and to the Agent of the Cooperating Company, if any, at the address below.

**22. Default:** Upon default by the Buyer, the Seller shall have the right to retain the Deposits, such right to be without prejudice to the right of the Seller to require specific performance and payment of other damages, or to pursue any remedy, legal or equitable, which shall accrue by reason of such default. If the Seller shall default in the performance of this Agreement, all Deposits shall be promptly returned to Buyer, and Buyer may pursue any and all remedies available to it at law or equity, including but not limited to specific performance. All disputes between the Buyer and Seller over the disposition of the Deposits shall be governed by Section 6.

**23. Assignment and Survivorship:** This Agreement may be assigned by either party without written consent of the other, and shall be binding upon the heirs, executors, administrators, successors and assigns of the parties hereto. However, this Agreement may not be assigned without the express written consent of the Seller, if it contains a provision for Seller financing.

**24. Accurate Disclosure of Selling Price:** The Buyer and Seller certify that this Agreement accurately reflects the gross sales price as indicated in Section 3 of this Agreement. The Buyer and Seller understand and agree that this information shall be disclosed to the Internal Revenue Service as required by law.

**25. The following Addendum(a),** is made a part of this Agreement: ______________________________

BUYER'S INITIALS NPD / [illegible] SELLER'S INITIALS [illegible]
under POA for Seller

Copyright© 2002 Rhode Island Association of REALTORS® FORM # 1401 (R-101) Rev. 10/02



**EXHIBIT A**

**26. Additional Provisions:** #3. (a) Property will continue to be shown for sale until full deposit is received. ~~Buyer to take over month to month lease of 12 Payne Road at closing (see attached).~~ HJ Dude POA for seller

SEE RIDER A ATTACHED AND INCORPORATED HEREIN BY REFERENCE THERETO

**27. Brokerage/Agency Confirmation Clause:**

| | |
|---|---|
| DAVID COLEMAN — S26860 | LISBETH HERBST — S21862 |
| Name of Listing Agent — License # | Name of Cooperating Agent, if not the same as Listing Agent — License # |
| of COLEMAN, INC. — 401-245-3050 | of RESIDENTIAL PROPERTIES, LTD. — 401-245-9600 |
| Listing Company — Phone Number | Cooperating Company — Phone Number |
| 210 COUNTY RD BARRINGTON, RI 028060099 | 259 COUNTY RD BARRINGTON, RI 028062406 |
| Address | Address |
| is the agent of: ( x ) the Seller exclusively, or ( ) both the Buyer and Seller | is the agent of: ( x ) The Buyer exclusively, or ( ) the Seller exclusively, or ( ) both the Buyer and Seller. |

This Agreement was prepared by: x Listing Agent above, _____ Cooperating Agent above, or

Name ______________________ Address ______________________

It is understood that a previously agreed upon broker's fee is to be paid to the Listing Broker at the time of closing from the Deposits held in the escrow account. If the deposit holder is other than the Listing Broker, said Deposits are to be brought to the closing, unless otherwise provided. If the Deposits are insufficient for the complete payment of the brokerage commission, such additional funds which are due are to be paid/accounted for prior to the recording of the Deed.

**28. Construction of Agreement:** This Agreement has been executed in one or more counterparts and each shall be deemed to be an original. If two or more persons are named herein as Seller or Buyer, their obligations hereunder shall be joint and several. All references to time periods shall be counted in calendar days.

**29. Entire Agreement:** We, the parties hereto, each declare that this instrument contains the entire agreement between us, subject to no understandings, conditions, or representations other than those expressly stated herein. This Agreement may not be changed, modified, or amended in whole or in part except in writing, signed by all parties. WITNESS the signatures of the above parties on the date(s) set forth below.

**When signed by all parties, this Agreement is intended to be a legally binding contract with specific legal consequences.**

| | | | |
|---|---|---|---|
| [signature] | 08/28/03 | James H Regalt by Harold Ligrotti (?) under Power of Attorney | 9/3/03 |
| BUYER | DATE | SELLER | DATE |
| [signature] | 8/28/03 | | |
| BUYER | DATE | SELLER | DATE |

*This form is protected by the federal copyright laws and is for exclusive use by Rhode Island REALTORS®.*

*Copyright© 2002 Rhode Island Association of REALTORS®* FORM # 1401 (R-101) Rev. 10/02



**EXHIBIT A**

# RIDER "A"

## SINGLE/MULTI FAMILY PURCHASE AND SALES AGREEMENT

Seller: James H. Reyelt

Buyers: William B. Danzell and Louise F. Bessler Danzell

Property: 10-12 Payne Road, Barrington, RI 02806

The parties hereby agree to the following:

1. The Buyers agree to execute a promissory note as part of the purchase price at the time of closing in the amount of $200,000 @ 5% interest due and payable one year from the closing date, or any written extension signed by the parties.

2. The Buyers intend to file for a Variance with the Town of Barrington seeking to remove the present house, building a new house and/or reconstructing the house with a new configuration. The Buyers agree that they will file for a Variance within three months of the date of the ~~execution of the Purchase and Sale Agreement~~ closing date WBD LD and the Seller agrees that if the Variance is filed prior to the closing, that he will sign the Variance as the owner of the property and cooperate with the Buyers as long as he is the owner.

3. In the event that the Variance is granted within one year of the date of application, then the Buyers shall forthwith pay the promissory note of $200,000 in full with interest thereon @ 5% per annum in arrears, meaning from the date of closing to the date of payment to the Seller.

4. In the event that the Variance is not granted within one year after application and the Buyers have been diligent and used good faith in their processing of said application for a Variance, or if the Variance has been denied and any appeal period has expired, then the Buyers shall pay over to the Seller $100,000 and 5% per annum interest on the full value of the note of $200,000 at the time of the denial or at the expiration of any appeal that is processed, together with the interest thereon. The price of the house will be reduced if this provision comes into existence to $1,325,000 plus interest on the face value of the note and all other obligations of the parties shall cease.

[signature] WBD
Buyer

[signature] LD
Buyer

James H Reyelt by Harold Jacobi III under POA
Seller

EXIBIT A

# RIDER "A"

## SINGLE/MULTI FAMILY PURCHASE AND SALES AGREEMENT

Seller: James H. Reyelt

Buyers: William B. Danzell and Louisa F. Beenker Danzell

Property: 10-12 Payne Road, Barrington, RI 02806

The parties hereby agree to the following:

1. The Buyers agree to execute a promissory note as part of the purchase price at the time of closing in the amount of $200,000 @ 5% interest due and payable one year from the closing date, or any written extension signed by the parties.

2. The Buyers intend to file for a Variance with the Town of Barrington seeking to remove the present house, building a new house and/or reconstructing the house with a new configuration. The Buyers agree that they will file for a Variance within three months of the date of the ~~execution of the Purchase and Sale Agreement~~ closing date WBD LD and the Seller agrees that if the Variance is filed prior to the closing, that he will sign the Variance as the owner of the property and cooperate with the Buyers as long as he is the owner.

3. In the event that the Variance is granted within one year of the date of application, then the Buyers shall forthwith pay the promissory note of $200,000 in full with interest thereon @ 5% per annum in arrears, meaning from the date of closing to the date of payment to the Seller.

4. In the event that the Variance is not granted within one year after application and the Buyers have been diligent and used good faith in their processing of said application for a Variance, or if the Variance has been denied and any appeal period has expired, then the Buyers shall pay over to the Seller $100,000 and 5% per annum interest on the full value of the note of $200,000 at the time of the denial or at the expiration of any appeal that is processed, together with the interest thereon. The price of the house will be reduced if this provision comes into existence to $1,325,000 plus interest on the face value of the note and all other obligations of the parties shall cease.

____________________ Buyer

____________________ Seller

____________________ Buyer

**EXHIBIT A**