UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JAMES H. REYELT,
*Plaintiff,*

vs.

WILLIAM B. DANZELL and LOUISA F. BEENKER DANZELL,
*Defendants.*

C.A. No. 06-0057ML

**DEFENDANTS, WILLIAM B. DANZELL AND LOUISA F. BEENKER DANZELL'S OBJECTION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

NOW COME Defendants, William B. Danzell and Louisa F. Beenker Danzell and hereby object to Plaintiffs' Motion for Summary Judgment. In support thereof, defendants rely upon the Memorandum of Law and LR Cv 56 Statement, attached and incorporated herein.

Defendants,
By their attorney,

/s/ Marc DeSisto
Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
Phone: (401) 272-4442
Fax: (401) 272-9937
Email: marc@desistolaw.com

CERTIFICATION OF SERVICE

I hereby certify that I electronically filed the instant Objection on September 18, 2006. A copy of the same is available for viewing and downloading from the Court's Electronic Case Filing system. Service on the following has been effectuated by electronic means:

Gordon P. Cleary, No. 1948
Vetter & White
20 Washington Place
Providence, RI 02903
(401) 421-3060
(401) 272-6803 Fax
gcleary@vetterandwhite.com

/s/ Marc DeSisto

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JAMES H. REYELT,<br>*Plaintiff,*<br><br>vs.<br><br>WILLIAM B. DANZELL and LOUISA F. BEENKER DANZELL,<br>*Defendants.* | C.A. No. 06-0057ML |

**DEFENDANTS, WILLIAM B. DANZELL AND LOUISA F. BEENKER DANZELL'S MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I. *Introduction*

The issue in this case is whether plaintiff is entitled to collect the full $200,000 on a Promissory Note or if the Note was discounted as a result of defendants' inability to obtain the necessary Town approval for renovations to the subject property. Plaintiff's claim that defendants' failure to file a "variance" application within three (3) months of the closing entitles him to collect full $200,000 is not supported by either the express language of the party's Agreement or the facts. In addition, plaintiff's alternative claim that defendants breached their duty of diligence and good faith is further negated by the actions taken by defendants to ensure that they secured the necessary permits by applying for a permit that was subject to a lesser standard than a variance and craft the desired renovations such to avoid a 200' coastal feature. In particular, as more fully outlined herein, after the execution of the Agreement it subsequently became apparent that a variance would not give defendants the relief they needed. Rather, in order to accomplish the renovations contemplated by the parties, defendants needed to obtain a "special use

permit" from the Town. Although they were unable to file this special use permit within the same three (3) month period the Agreement called for filing a "variance" application, defendants diligently took the steps necessary to perfect their application and received a decision within the requisite one (1) year as contemplated by the Agreement. Defendants thus submit that plaintiff's motion for summary judgment should be denied.

II. *Background Facts*

In July 2003, defendants, William B. Danzell and Louisa F. Beenker Danzell (hereinafter defendants), sought to purchase property in Barrington, R.I. The defendants were specifically seeking a new home for their family. After placing a down payment on the property owned by plaintiff, James H. Reyelt, located at 10-12 Payne Road, Barrington, RI, defendants learned that the use of the property was a legal, non-conforming use and would require Zoning Board approval for the defendants to make renovations to accommodate their familial needs. Defendants thus withdrew their offer on the property. *See Attached Exhibit A.* After negotiation, the parties subsequently agreed to a purchase the property for $1,425,000, with the caveat that a portion of the purchase price ($200,000) would be given through a one year promissory note. *Single/MultiFamily Purchase and Sales Agreement with Rider A (Attached Exhibit B).* If defendant were able to obtain a "variance" to renovate the property as they wanted within one year of closing, then defendants agreed to pay the full $200,000 plus interest. Id. If, however, the defendants were denied the right to make the renovations, the promissory note would be reduced to $100,000 plus interest. Quite simply, defendants viewed the property to be worth $100,000 less if they were unable to renovate the buildings on their property to accommodate their needs. Rider A to the Purchase and

Sale Agreement further provided that defendants would file an application for a variance within three (3) months of the closing.

After the closing, defendants subsequently learned that a "variance" would not give them the right to perform the renovations as contemplated by the parties. *Correspondence of Attorney Anthony DeSisto, December 10, 2004 (Attached Exhibit C).* In particular, under Rhode Island law, there are two (2) types of variances, a use variance or a dimensional variance. *Id.* A "use variance" allows for a use not otherwise permitted in the particular zone. A "dimensional variance", meanwhile, allows a use that does not conform to the dimensional regulations of the zone. Because defendants were seeking to expand a legal-non-conforming use, it was determined that the proper application would be a request for a "special use permit" under § 185-33 of the Town of Barrington's Zoning ordinance. *Id.* Specifically, because a non-conforming use cannot be demolished and rebuilt unless the new structure conformed to all applicable regulations, defendants decided to seek permission to add an addition to one of the existing structures. *Id.* The standard for granting a special use permit is less than a variance. *Id.* Defendants thus believed they had a greater likelihood of being approved by the Zoning Board if they sought a special use permit. *Id.*

Although the special use permit application was subject to a lesser standard, there were still several issues that had to be worked out before the application was submitted. One issue that needed to be addressed was the fact that the property was within two hundred (200') feet of a coastal feature, the Narragansett Bay. *Id.* This proximity to the coastal feature required defendants to carefully prepare the proposed addition such to not infringe upon the coastal feature. If the addition encroached upon the coastal feature

defendants would need to obtain approval from both the Coastal Resource Management Commission as well as the Conservation Commission. Id. By carefully drafting a plan that avoided the coastal feature defendants were freed from the additional regulatory hurtles and thus improved the likelihood of receiving the necessary approval. The defendants therefore were ultimately limited to the proposed addition as outlined in the plan. *See Newport Collaborative Architects, Inc., Architectural plans for Danzell Residence, SK-1 through SK-4 (June 17, 2004), Attached to the Application for Special Use Permit (Attached Exhibit D).*

Because the Barrington Zoning Board of Review will not accept a "skeleton" application and allow an applicant to add on information afterwards, such matters had to be worked out and/or prepared for before the filing of the application. *See Exhibit C.* In addition, the Town of Barrington Zoning Ordinances do not provide for a preliminary or pre-application hearing. *Id.* Thus, because there is just one hearing per zoning application, defendants needed to ensure that they were properly prepared before submitting their application. Once these issues were worked out, defendants prepared and submitted the necessary Special Use application. *See Attached Exhibit D.*

It is noteworthy that in January 2004, plaintiff's attorney, Harold Jacobi III, contacted defendants' attorney seeking information on the progress of the permitting process. In response, Attorney Anthony DeSisto wrote to Attorney Jacobi on January 29, 2004 and informed him that he was in the process of obtaining the necessary permits but because of the condition of the property, the permitting process was not a simple matter of applying for a "variance." *See Correspondence of Attorney Anthony DeSisto, January 29, 2004 (Attached Exhibit E).* Attorney DeSisto asked Attorney Jacobi to contact him

so that they could discuss the regulatory process that defendants needed to comply with in order to obtain the necessary permits. Id. Attorney DeSisto again wrote to Attorney Jacobi on April 20, 2004 and, after apologizing and explaining that he had been recently injured and out of the office, informed him that the preliminary work had been completed and he expected a hearing before the Barrington Zoning Board on June 17, 2004. *Correspondence of Attorney Anthony DeSisto, April 20, 2004 (Attached Exhibit F).* Attorney DeSisto again invited Attorney Jacobi to call him for a full update on the application. Id.

Unaware that the plaintiff considered the inability to file a "variance" application within three (3) months to be fatal to the Rider Agreement or that plaintiff objected to proceeding with the Special Use permit application rather than a "variance", defendants went forward with the application process and were finally able to file the completed application on August 18, 2004. On August 18, 2004, Attorney DeSisto again wrote to Attorney Jacobi and provided him with an update on the permitting process including the fact that a special use permit had been filed and that he expected a decision by October 21, 2004. See *Correspondence of Attorney Anthony DeSisto, August 18, 2004 (Attached Exhibit G)*. Attorney Jacobi did not contact Attorney DeSisto to express any concern over the process or to challenge the defendants' actions.

A hearing was held on October 21, 2004, by the Barrington Zoning Board. Although defendants were out of town, their attorney who had prepared the Special Use application as well as their architect, Jay Litman, appeared before the Board to argue for the permit. Unfortunately, two (2) neighbors (one represented by a relative, who was also a lawyer) also appeared at this hearing and objected to the application. *See Zoning*

*Board Decision (Attached Exhibit H).* During the discussion of the application, the issue of the Conservation Commission's jurisdiction was raised. Id. Because they had prepared for it, defendants vigorously opposed the Conservation Commission's claim to jurisdiction and the Zoning Board agreed to proceed with the application. *Id.*

During the Board's discussion on the application, one Board member opined that the applicant had no "concrete plans". The statement was apparently in response to the neighbor's objection that they didn't know what the shingles, windows and landscaping would ultimately look like. However, a special use permit application does not require an applicant to specifically identify the type of windows, shingles, etc. In fact, the statement that defendants lacked "concrete plans" is specifically negated by the architectural design prepared and submitted by the defendants. *See Exhibit D*. On October 21, 2004, the Board nevertheless voted to deny the application and, in its written decision concluded:

> "A) the public convenience and welfare will not be substantially served; B) that it will not be in harmony with the general purpose of the ordinance and with the Comprehensive Community plan; C) that it will not result in or create conditions that will be inimical to the public health, safety, morals and general welfare of the community; and D) that it will substantially and permanently injure the appropriate use of the property in the surrounding area or district."

*Exhibit H.* Attorney DeSisto informed plaintiff of this denial on or about October 27, 2004, within the one year window provided by the Agreement. See *Attached Exhibit I.* Plaintiff thereafter filed the instant suit seeking to recover the full face value of the Promissory Note.

III. *Standard of Review*

As plaintiff recites, under the Federal Rules of Civil Procedure, summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c)*. In addressing whether there are such factual issues in dispute, the Court must view the evidence in the light most favorable to the nonmoving party, in this case defendants. *Morrissey v. Boston Five Cents Savings Bank, F.S.B., 54 F.3d 27, 31 (1st Cir. 1995)*. "A fact is 'material' if it potentially could affect the suit's outcome. An issue concerning such a fact is 'genuine' if a reasonable fact finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortes-Iriszarry v. Corporacion Insular DeSeguros, 111 F.3d 184, 187 (1st Cir. 1997) (citations omitted)*.

Defendants submit that when the evidence is viewed in the light most favorable to defendants, there are factual issues in dispute that preclude the entry of summary judgment. In particular, the question of whether the defendants acted diligently and in good faith in their attempt to gain the necessary permits is a factual question for the jury to determine. As such, summary judgment in favor of plaintiff should be denied.

IV. *The Three (3) Month Timeframe To File The Variance Application Was Not An Essential Element Of The Agreement, And, In Any Event, Plaintiff Waived This Time Period*

As an initial matter, plaintiff argues that he is entitled to the full face value of the Note because the three (3) month window for filing for a “variance” was an essential element of the Agreement that was breached by defendants. In making this argument, however, plaintiff recognizes that under Rhode Island law, a breach of a time element is not automatically fatal. *Fracassa v. Doris, 814 A.2d 357, 362 (R.I. 2003)*. Rather, plaintiff must demonstrate that the time fixed for performance is a material part of the

contract. Id. That being said, under Rhode Island law, "[c]ontract provisions relating to time do not by their mere presence in an agreement make time of the essence." Safeway System, Inc. v. Manuel Bros., Inc., *102 R.I. 136, 145, 228 A.2d 851, 856 (1967).*

In the instant case, defendants submit that it is the one (1) year anniversary of the closing that reflects the time fixed for performance rather than the three (3) month period to file a "variance" application. In fact, in support of their motion for summary judgment, plaintiff recognizes that the reason for having defendants file their variance application within three (3) months was to facilitate receiving a decision by the Zoning Board within one (1) year from the date of the closing, October 30, 2004.[1] *Plaintiff's Memorandum, at 1 & 5*. According to plaintiff, the reason for requiring defendants to file their application within three (3) months was the recognition that the variance process is often long, complicated procedure. According to plaintiff, by placing a three (3) month window from the date of closing, plaintiff and defendants were assured of receiving a decision by the Zoning Board within one (1) year of the closing.[2] Id. *at 5.*

Defendants thus submit that while the three (3) month requirement was meant to facilitate receiving a decision within a year of the closing, in fact, the one (1) year anniversary of the closing was the time frame agreed to by the parties to be "of the essence." This is further supported by the fact that it is the one (1) year deadline, not the three (3) month deadline, that is the triggering event for the reduction of the purchase price. The Rider provides no penalty or reward associated with this three (3) month time

[1] Although the parties have agreed that October 30, 2004, is the time line to be applied, it is noteworthy that Rider A to the Purchase and Sale actually grants defendants one (1) year from the date of application. Thus, October 30, 2004, was the earliest date that defendants had to obtain the necessary approvals.
[2] Plaintiff however, erroneously state that requiring the variance to be filed within three (3) months would allow defendants to correct any deficiencies in the application or correct the quantum of evidence to be offered in support of the application in the course of the proceedings. Under the Town of Barrington Zoning Ordinances, an applicant is only given one hearing and is not granted the right to a preliminary or pre-application review. See *Attached Exhibit C.*

frame. There is no dispute that defendants received a decision addressing whether they could renovate the property within one year from the closing. As evidence by the attached exhibits, the Zoning Board held a hearing on October 21, 2004, and denied defendants' application. Defendants' attorney relayed the fact that the application was denied on October 27, 2004. *Correspondence of Attorney Anthony DeSisto, October 27, 2004 (Attached Exhibit I).* Accordingly, even though they were not able to comply with the three (3) month window for filing the variance application, the defendants were able to get a decision from the Zoning Board within the one year time frame.

Defendants would alternatively submit that even if it decided that the three (3) month for filing a variance application were a material part of the Agreement, plaintiff are still not entitled to summary judgment. In particular, " 'like any other provision to a contract, time is of the essence may be waived by express agreement or impliedly by conduct that contributes to the delay in performance.'" *Haydon v. Stamas, 900 A.2d 1104, 1112 (R.I. 2006) quoting Fracassa, 814 A.2d at 363 and citing Thompson v. McCann, 762 A.2d 432, 437 (R.I. 2000) ("[E]ven '[a] provision making time of the essence may be waived either expressly or impliedly.'").* In the instant case, when viewed in the light most favorable to defendants, there is sufficient evidence that plaintiff waived this three (3) month filing deadline. In particular, as outlined above, plaintiff were made aware by Attorney DeSisto's January 29, 2004 correspondence that obtaining the necessary permission for the renovations required more than filing a "variance" application and inviting plaintiff's attorney to call him to discuss it further. Thereafter, plaintiff was informed of the scheduled hearing date on the special permit application. *Exhibit G.* Rather than relay their claim that failure to file a "variance" application by

January 30, 2004, negated the price reduction provision, plaintiff allowed defendants to proceed with the special use application through to hearing. It was only after defendants were denied the necessary permits and sought release of the funds that plaintiff challenged the timeliness of the hearing through the instant litigation. Defendants would thus submit that although the three (3) month filing period was not an essential element of the Agreement, even if it were, plaintiff implicitly waived this requirement by failing to object to defendants pursuing a special use permit.

V. *Whether The Defendants Acted In Good Faith And Diligently Is A Factual Issue Precluding The Entry Of Summary Judgment*

Plaintiff alternatively argues even if the Court concludes that the three (3) month time limit should not be strictly construed, plaintiff is nevertheless entitled to summary judgment because the "undisputed" facts do not support a finding of good faith and diligence on the part of defendants in their pursuit of the necessary permits for renovating the property. Defendants respond that viewing the evidence in the light most favorable to defendants, as the Court must, *Morrissey, 54 F.3d at 31,* there is ample evidence to support a finding that defendants in fact acted in good faith and diligently throughout the permitting process.

As noted by plaintiff, in addressing this Motion this Court is guided by Rhode Island law. Although there is not a large body of cases in Rhode Island discussing whether a party's good faith and diligence is a factual or legal question, the Rhode Island Superior Court recently concluded that "whether or not parties have acted in good faith is largely a factual question." *St. Angelo Motors, Inc. v. County Dev. Assocs., LLC, 2004 R.I. Super. LEXIS 69, 18-19 (R.I. Super. Ct. 2004).* In that case, the parties had entered a commercial lease that excused the tenants from the lease if they were unable, in good

faith, to obtain all necessary building permits to construct a pharmacy on the leased property. In denying the tenant's motion for summary judgment and holding that the question of whether the tenants acted in good faith was a question of fact, the Court relied upon case law from other jurisdictions which have uniformly held that such a determination is properly left for a jury determination. *Id. citing Tepedino v. City of Long Beach, 226 A.D.2d 446, 640 N.Y.S. 2d 591 (1996) (Whether a party to a contract has failed to act in good faith is generally a fact question for jury); Habetz v. Condon, 224 Conn. 231, 618 A.2d 501 (Conn. 1992) (It is the burden of the party asserting lack of good faith in contract disputes to establish its existence, and whether the burden has been satisfied is a question of fact); Phillipe v. Thomas, 3 Conn. App. 471, 489 A.2d 1056 (Conn. App. 1985) (Whether a plaintiff's actions constituted reasonable efforts to satisfy a contractual condition is a factual determination for the trial court); Fernandez v. Vazquez, 397 So. 2d 1171 (1981) (Whether landlord acted in good faith and cooperated with the conditions of a contract is to be determined by a jury according to the facts of the case); Burke v. General Outdoor Advertising Co., 110 Pa. Super. 343, 168 A. 334 (Pa. Super. 1933) (In an action for rent for use of a roof under a lease providing that if authorities did not permit signs on the roof, the lease could be cancelled, whether the lessee applied for a permit in good faith and was refused was a question left for the jury).*

In the instant case, defendants submit that there is more than enough evidence to support a finding that defendants were diligent and acted in good faith in their attempt to receive the appropriate permits. In the first instance, it is noteworthy that in support of their claim that defendants did not act in good faith and diligently, plaintiff relies upon the fact that a "variance" application was not filed within three (3) months of the closing.

*Plaintiff's Memorandum, at 6.* As explained *infra*, the reason for the delay in the filing began with the discovery that getting a "variance" as contemplated by the Agreement would not have accomplished the desired renovations. The defendants were thus required to engage in the alternative method of obtaining the necessary Town permission. The renovation of the property was further complicated by the fact that the property was a legal non-conforming use that is within 200' of a coastal feature. As outlined above, defendants needed to obtain architectural plans that not only met defendants' needs but also sited the addition in such a way as to avoid the often cumbersome additional regulatory requirements that would have attached if the renovations were sited within the coastal buffer.

Apparently in support of their contention that defendants were not diligent in the application process, plaintiff claims that the defendants failed to submit plans that complied with the Zoning Ordinances. *Plaintiff's Memorandum, at 5.* In support of this, plaintiff offers no evidence, citation or further argument beyond the bald assertion. Although plaintiff does not refer the Court to the same, the only indication in any of plaintiff's pleadings to support this contention is the allegation in Plaintiff's Statement of Undisputed Facts that in the "Minutes of the October 21, 2004 proceeding, the Board noted that 'the plans that were present [by defendants] had no details as to what this structure would look like, which heightens the risk of non-conformity. The Applicant has no concrete plans and should have specific plans." *Plaintiff's Statement of Undisputed Facts, ¶ 12.* Defendants would note in the first instance that in addition to the fact that the statement quoted by plaintiff in fact was not a holding of the Board but merely the opinion of one Board member expressed during the discussion on the application. See

*Exhibit H.* Notably, the Board did not cite the defendants' failure to submit plans that complied with the Zoning Ordinances as a basis for denying the application,. Rather, the Board determined that requested renovations did not meet the standards necessary for granting the special use permit. The Board did not cite any deficiency in the application as a basis to deny the same. In fact, under the Town of Barrington zoning laws, the zoning official would not have placed an application on the Zoning Board's agenda if the application was deficient and didn't comply with the Zoning Ordinances.

Defendants nevertheless challenge the Board member's opinion that the plans lacked sufficient details or "concrete plans." Defendants specifically refer the Court to the Architectural plans, commissioned and submitted in support of the Special Use permit application and attached as *Exhibit D.*

Plaintiff's allegation that defendants were not diligent and acted in bad faith is further countered by the application of pure common sense to the facts of this case. That is, in light of their knowledge that a "variance" application would not have given them the relief requested but that they could obtain such relief by filing for a permit that was held to a lesser standard, it would have been a breach of good faith and diligence if defendants **had** nevertheless gone ahead and filed a variance application in the three (3) month period. In the final analysis, if plaintiff's premise were to be accepted, that is, that defendants' actions were intended to result in a denial by the Town and thus reduce the purchase price of the property, defendants could have easily filed the "variance" application within the three (3) month period and simply await the denial of the same. The fact that they undertook the research and necessary steps to ensure the greatest likelihood that they would receive the appropriate permit to accomplish their goal, in and

of itself demonstrates their good faith and diligence. Plaintiff's motion for summary judgment should thus be denied.

VI. *Conclusion*

For the reasons cited herein, as well as those that may be raised at hearing, defendants respectfully request that plaintiff's Motion for Summary Judgment be denied.

Defendants,
By their attorney,

/s/ Marc DeSisto
Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
Phone: (401) 272-4442
Fax: (401) 272-9937
Email: marc@desistolaw.com

CERTIFICATION OF SERVICE

I hereby certify that I electronically filed the instant Objection on September 18, 2006. A copy of the same is available for viewing and downloading from the Court's Electronic Case Filing system. Service on the following has been effectuated by electronic means:

Gordon P. Cleary, No. 1948
Vetter & White
20 Washington Place
Providence, RI 02903
(401) 421-3060
(401) 272-6803 Fax
gcleary@vetterandwhite.com

/s/ Marc Desisto