Exhibit C

ANTHONY DESISTO & ASSOCIATES
*Attorneys At Law*

One Turks Head Place, Suite 1010
Providence, RI 02903-2215

Anthony DeSisto
desisto@conversent.net
Katherine McNamara Feodoroff *
kmf.desisto@conversent.net

Telephone 401.421.0170
Facsimile 401.421.0677
*Also Admitted in Massachusetts

December 10, 2004

Harold Jacobi, Esquire
Jacobi & Associates
4 Militia Drive
Lexington, MA 02421

Re: *Danzell v. Reyelt*
10-12 Payne Road
Barrington, Rhode Island

Dear Mr. Jacobi:

This letter is a follow-up to your e-mail to me dated December 1, 2004. As you know, I was not involved in the drafting of Rider "A", and difficulties encountered in this matter stem in part from the language used to describe what Mr. Danzell was to do, as well as the time line employed in that section.

In the first place, the term "variance" is employed in Rider A. In Rhode Island, that term is applied to petitions for a "use" variance, meaning a variance for a use not permitted in that particular zone, or a "dimensional" variance, meaning that the proposed use does not conform to the dimensional regulations of the zone.

The property that your client sold to the Danzells is characterized as a prior non-conforming use, because there are two principal structures on one lot. That is a violation of § 185-4 of the Barrington Zoning Ordinance. The use is legal, however, since it predates the enactment of that restriction, pursuant to § 185-30 of the ordinance. In order to expand a non-conforming use, the property owner is required to file for a special use permit under § 185-33. Please note that a non-conforming use cannot be demolished and rebuilt unless the new structure conforms to all applicable regulations. Based upon this, the application that I filed on behalf of the Danzells requested that a special use permit issue to expand a legal non-conforming use for an addition to the water side house. There is a lesser standard for the granting of an application of this nature than for a true variance.

In short, use of the word "variance" was incorrect for purposes of Rider A. What the Danzells did apply for was subjected to a lesser standard and had a greater likelihood of being approved by the Zoning Board.

There is another issue in regard to the timeline set forth in Rider A. Although there is a ninety (90) day window to file, paragraph 4 of Rider A gives an outside limit of one (1) year for the variance, so-called, to be granted. The special use permit was denied on October 21, 2004. As I have previously written to you, much work went into the application for the special use permit, and the process did wind up within the one year window as referenced above. Since the process did resolve within the year, I am left to question what, if any, prejudice accrued to Mr. Reyelt based upon the time of filing.

In order to file an application with the Town of Barrington's Zoning Board of Review, a radius map needs to be prepared, as well as a site plan and elevations of the proposed building. Please note that as shown on plan SK-1, the property is within two hundred (200') feet of a coastal feature, in this case Narragansett Bay. An issue developed as to whether the application needed a hearing before the Conservation Commission, which I vigorously opposed and ultimately prevailed upon before the Zoning Board. There would have been additional regulatory requirements if the additions as proposed were sited differently than on the plans. Matters of this nature need to be addressed prior to the filing of an application; the Barrington Zoning Board of Review will not accept a "skeleton" application and allow the applicant to add on information afterwards. Furthermore, there is just one hearing per application, and the Zoning Ordinance does not provide for preliminary or pre-application hearings.

Unfortunately, this application was denied. I have previously written to you that the neighbor to the west of the property, Arthur Coia, was represented by a lawyer at the hearing and objected to the application. The concern as voiced by his lawyer was that the new residence would be fourteen (14') feet from the lot line, and Mr. Coia was concerned about his privacy even though the proposed addition did not extend into the side yard setback. In addition to this, some of the board members expressed concern over the expansion of any non-conforming use.

I would ask you to review the letters I sent you on October 27, August 18, April 20, and January 29, 2004 in regard to this matter. I disagree with your assertion that you were not kept informed as to the progress of this application process. In fact, this letter basically restates what was contained in those prior letters.

I have also reviewed your letters to me during that time. Those letters, in the same fashion as your December 1 e-mail, ask for information, but never state that Mr. Reyelt intended to seek the entire two hundred thousand ($200,000.00) dollars because of

the timing of the filing of the special use permit application. I repeat that my client went forward with this process, to the end, in reliance on those letters.



Please let me know if anything further is needed in regard to this matter, and I look forward to your response to this letter.

Very truly yours,

Anthony DeSisto

AD/baj
41210jacobi.danzell

copy: William Danzell