UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JAMES H. REYELT,<br>*Plaintiff,*<br><br>vs.<br><br>WILLIAM B. DANZELL and<br>LOUISA F. BEENKER DANZELL,<br>*Defendants.* | C.A. No. 06-057ML |

**PRETRIAL MEMORANDUM OF DEFENDANTS,**
**WILLIAM B. DANZELL AND LOUISA F. BEENKER DANZELL**

## I. INTRODUCTION

By and through the instant action, plaintiff seeks to recover $200,000 on a Promissory Note executed by and between the parties on or about October 30, 2003, as part of the sale of plaintiff's property in Barrington, R.I. to defendants. Defendants submit that the value of the Note was reduced, by agreement, to $100,000 upon defendants' inability to obtain Town approval to renovate the property within one (1) year of the closing on the property. At issue in the instant case is whether defendants made a good faith and diligent attempt to obtain the necessary Town approval or if their failure to file a "variance" application—which would NOT have granted them the relief contemplated by the parties—within three (3) months of the closing obligates them to pay the full value of the Note.

## II. FACTS IN DEFENSE

In July 2003, defendants, William B. Danzell and Louisa F. Beenker Danzell (hereinafter "defendants"), sought to purchase property in Barrington, RI, for their family. After making an offer and placing a down payment on the property owned by plaintiff, James H. Reyelt

(hereinafter "plaintiff"), located at 10-12 Payne Road, Barrington, RI, defendants learned that the use of the property was a legal, non-conforming use and would require Zoning Board approval for the defendants to make the renovations necessary to accommodate their familial needs. Defendants thus withdrew their offer on the property. After negotiation, the parties subsequently agreed to a purchase price of $1,425,000, with the caveat that a portion of the purchase price ($200,000) would be given through a one-year promissory note ("Note"). If defendants were able to obtain a "variance" to renovate the property as they wanted within one (1) year of closing, then the purchase price would remain at $1,425,000 and defendants would pay the full value of the Note, $200,000, plus interest. If, however, the defendants were denied the right to make such renovations, the purchase price of the property would be reduced by $100,000 thus reducing the value of the Promissory Note to $100,000 plus interest. Quite simply, defendants viewed the property to be worth $100,000 less if they were unable to renovate the buildings on their property to accommodate their needs. While Rider A to the Purchase and Sale Agreement provided that defendants would file an application for a variance within three (3) months of the closing, this three-month period was intended to facilitate the parties receiving a response from the Barrington Zoning Board within one (1) year of the closing.

After the closing, defendants subsequently learned that a "variance" would not give them the right to perform the renovations as contemplated by the parties. In particular, under Rhode Island law, there are two (2) types of variances, a use variance and a dimensional variance. A "use variance" allows for a use not otherwise permitted in the particular zone. A "dimensional variance" allows a use that does not conform to the dimensional regulations of the zone. Because defendants were seeking to expand a legal, non-conforming use, it was determined that the proper application would be a request for a "special use permit" under § 185-33 of the Town

of Barrington's Zoning ordinance. Specifically, because a non-conforming use cannot be demolished and rebuilt unless the new structure conformed to all applicable regulations, defendants decided to seek permission to add an addition to one of the existing structures. The standard for granting a special use permit is less than a variance. Defendants thus further believed they had a greater likelihood of being approved by the Zoning Board if they sought a special use permit.

Filing the special use permit application in lieu of a "variance" request was also beneficial to all parties because it is subject to a lesser standard of review. However, there were still several issues that had to be worked out before the application was submitted. One issue that needed to be addressed was the fact that part of the property was within two hundred feet (200') of a coastal feature, the Narragansett Bay. This proximity to a coastal feature required defendants to carefully prepare the proposed addition so as not to infringe upon the coastal feature. If the addition encroached upon the coastal feature defendants would need to obtain approval from both the Coastal Resource Management Commission as well as from Barrington's Conservation Commission. Barrington's Conservation Commission is an advisory board to the Zoning Board and is notorious for recommending against proposed renovations. By carefully drafting a plan that avoided the coastal feature, defendants were freed from the additional regulatory hurdles and thus improved the likelihood of receiving the necessary approval. The defendants therefore were ultimately limited to the proposed addition as outlined in the plan.

Because the Barrington Zoning Board of Review will not accept a "skeleton" application and allow an applicant to add on information afterwards, such matters had to be worked out and/or prepared for before the filing of the application. In addition, the Town of Barrington Zoning Ordinances do not provide for a preliminary or pre-application hearing. Thus, because

there is just one hearing per zoning application, defendants needed to ensure that they were properly prepared before submitting their application. Once these issues were worked out, defendants prepared and submitted the necessary Special Use application. In order to further improve their chance of success on the application, defendants also held several meetings with a neighboring abutter in an attempt to resolve any objections that he may raise at a hearing.

It is noteworthy that in January 2004, plaintiff's attorney, Harold Jacobi III, contacted defendants' attorney seeking information on the progress of the permitting process. In response, Attorney Anthony DeSisto wrote to Attorney Jacobi on January 29, 2004 and informed him that he was in the process of obtaining the necessary permits but because of the condition of the property, the permitting process was not a simple matter of applying for a "variance." Attorney DeSisto asked Attorney Jacobi to contact him so that they could discuss the regulatory process that defendants needed to comply with in order to obtain the necessary permits. Attorney DeSisto again wrote to Attorney Jacobi on April 20, 2004 and, after apologizing and explaining that he had been recently injured and out of the office, informed him that the preliminary work had been completed and he expected a hearing before the Barrington Zoning Board on June 17, 2004. Attorney DeSisto again invited Attorney Jacobi to call him for a full update on the application.

Unaware that the plaintiff considered the inability to file a "variance" application within three (3) months to be fatal to the Rider Agreement or that plaintiff objected to proceeding with the Special Use permit application rather than a "variance," defendants went forward with the application process and were finally able to file the completed application on August 18, 2004. On that same day, Attorney DeSisto again wrote to Attorney Jacobi and provided him with an update on the permitting process including the fact that a special use permit application had been

filed and that he expected a decision by October 21, 2004. Attorney Jacobi did not contact Attorney DeSisto to express any concern over the process, the decision to file for a special use permit or to otherwise challenge the defendants' actions.

A hearing was held on October 21, 2004, by the Barrington Zoning Board. Attorney Anthony DeSisto, who had prepared the Special Use application appeared on defendants' behalf before the Board to argue for the permit. Architect, Jay Litman, who had prepared the renovation plans likewise appeared on defendants' behalf. Unfortunately, two (2) neighbors (one represented by a relative who is a lawyer) also appeared at this hearing and objected to the application. During the discussion of the application, the issue of the Conservation Commission's jurisdiction was raised. Because they had prepared for it, defendants vigorously and successfully opposed the Conservation Commission's claim to jurisdiction and the Zoning Board agreed to proceed with the application.

On October 21, 2004, the Board voted to deny the application and, in its written decision concluded that—

> A) the public convenience and welfare will not be substantially served; B) that it will not be in harmony with the general purpose of the ordinance and with the Comprehensive Community plan; C) that it will not result in or create conditions that will be inimical to the public health, safety, morals and general welfare of the community; and D) that it will substantially and permanently injure the appropriate use of the property in the surrounding area or district. *Barrington Zoning Board Decision, October 21, 2004.*

Attorney DeSisto informed plaintiff of this denial on or about October 27, 2004, within the one-year window provided by the Agreement. Defendants subsequently tendered payment on the Note for the reduced value of $100,000, plus interest. Plaintiff thereafter demanded and subsequently filed the instant suit seeking to recover $200,000 on the Promissory Note plus interest and attorney's fees.

## III. MEMORANDUM OF LAW

Plaintiff's claim that defendants' failure to file a "variance" application within three (3) months of the closing entitles him to collect the full $200,000 is not supported by either the express language of the party's Agreement or the facts. In addition, plaintiff's alternative claim that defendants breached their duty of diligence and good faith is further negated by the actions taken by defendants to ensure that they secured the necessary permits by applying for a permit that was subject to a lesser standard than a variance and craft the desired renovations such to avoid a 200' coastal feature.

Plaintiff first maintains that he is entitled to the full face value of the Note because defendants did not file a "variance" application within three (3) months of the closing. Under Rhode Island law, a breach of a time element is not automatically fatal to a party's performance under the contract. *Fracassa v. Doris, 814 A.2d 357, 362 (R.I. 2003)*. Rather, in order to succeed on his claim, plaintiff must demonstrate that the time fixed for performance is a material part of the contract. *Id.* That being said, under Rhode Island law, "[c]ontract provisions relating to time do not by their mere presence in an agreement make time of the essence." *Safeway System, Inc. v. Manuel Bros., Inc., 102 R.I. 136, 145, 228 A.2d 851, 856 (1967)*. Moreover, the party "contending that time is of the essence of the contract has the burden of proof thereon." *Id.* *quoting Sal's Furniture Co. v. Peterson, 86 R.I. 203, 208, 133 A.2d 770, 773 (1953).* If that party is unable to satisfy his or her burden, then performance within a reasonable time of the contemplated date is acceptable under the contract. *Id.*

In the instant case, defendants submit that it is the one (1) year anniversary of the closing that reflects the time fixed for performance rather than the three-month period to file a "variance" application. In fact, in support of their Motion for Summary Judgment, plaintiff

recognized that the reason for having defendants file their variance application within three (3) months was to facilitate receiving a decision by the Zoning Board within one (1) year from the date of the closing, October 30, 2004. *Plaintiff's Memorandum in Support of Motion for Summary Judgment, at 1 & 5*. According to plaintiff, the reason for requiring defendants to file their application within three (3) months was the recognition that the variance process is often a long and complicated one. According to plaintiff, by placing a three-month window from the date of closing, plaintiff and defendants were assured of receiving a decision by the Zoning Board within one (1) year of the closing.[1] *Id. at 5.*

Defendants thus submit that while the three-month requirement was meant to facilitate receiving a decision within a year of the closing, in fact, the one (1) year anniversary of the closing was the time frame agreed to by the parties to be material and "of the essence" to the contract. This is further supported by the fact that it is the one-year deadline, not the three-month deadline that is the triggering event for the reduction of the purchase price. The Rider provides no penalty or reward associated with this three-month time frame. There is no dispute that defendants received a decision addressing whether they could renovate the property within one (1) year from the closing. The Zoning Board held a hearing on October 21, 2004, and denied defendants' application. Defendants' attorney relayed the fact that the application was denied on October 27, 2004. Most telling is the fact that despite having knowledge that an application was not filed until August, plaintiff did not advise defendants that they expected full payment under the Note but rather waited until defendants received the denial by the Zoning Board. Accordingly, even though they were not able to comply with the three-month window

[1] Plaintiff, however, erroneously states that requiring the variance to be filed within three (3) months would allow defendants to correct any deficiencies in the application or correct the quantum of evidence to be offered in support of the application in the course of the proceedings. Under the Town of Barrington Zoning Ordinances, an applicant is only given one hearing and is not granted the right to a preliminary or pre-application review.

for filing the "variance" application, the defendants were able to get a decision from the Zoning Board within the one-year time frame.

Defendants would alternatively submit that even if it is decided that the three-month filing deadline is "of the essence" and a material part of the Agreement, this three-month time frame has been orally modified by the parties. "Parties are free to modify a written agreement orally" by demonstrating both subjective and objective intent to be bound by the new contract's terms. *GBM Acquisitions, Inc. v. Adams, 823 A.2d 1121, 1124 (R.I. 2003) citing Fondedile, S.A. v. C.E. Maguire, Inc., 610 A.2d 87, 92 (R.I. 1992).*

In the instant case, as outlined above, plaintiff was made aware by Attorney DeSisto's January 29, 2004 correspondence that obtaining the necessary permission for the renovations required more than filing a "variance" application and inviting plaintiff's attorney to call him to discuss it further. Thereafter, plaintiff was informed of the scheduled hearing date on the special permit application. Rather than relay his claim that failure to file a "variance" application by January 30, 2004, negated the price reduction provision, plaintiff allowed defendants to proceed with the special use application through to hearing and decision. It was only after defendants were denied the necessary permits and sought release of the funds that plaintiff challenged the timeliness of the application.

Moreover, a modification was necessary in part because of the parties "mutual mistake" of requiring defendants to apply for a "variance." More specifically, it was understood by the parties that defendants would seek to expand a legal-non-conforming use by renovating the

house. Neither a "use variance" nor a "dimensional variance"[2] would operate to permit such an expansion. Rather, a "special use permit" was the applicable approval needed. By definition, a mutual mistake is one that is "common to both parties wherein each labors under a misconception respecting the same terms of the written agreement sought to be canceled." *Leonard v. McDowell, 824 A.2d 1266, 1270 (R.I. 2003).* "An agreement containing a mutual mistake fails in a material respect correctly to reflect the understanding of both parties." *McEntee v. Davis, 861 A.2d 459, 463 (R.I. 2004).* A mutual mistake must be proven by clear and convincing evidence. *Id.* Thus, although defendants submit that although the requirement that defendants file a "variance" application within three (3) months of the closing was not a material element of the Agreement, even if it were, it was orally modified by the parties.[3]

Defendants submit that since the three-month period is not material to the contract or, in the alternative that the parties modified this three-month period, the only outstanding issue is whether defendants acted diligently and in good faith in their attempt to obtain necessary zoning

---

[2] Rhode Island General Laws specifically defines the two (2) type of variances as follows:

> (i) Use Variance. Permission to depart from the use requirements of a zoning ordinance where the applicant for the requested variance has shown by evidence upon the record that the subject land or structure cannot yield any beneficial use if it is to conform to the provisions of the zoning ordinance.
>
> (ii) Dimensional Variance. Permission to depart from the dimensional requirements of a zoning ordinance, where the applicant for the requested relief has shown, by evidence upon the record, that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property unless granted the requested relief from the dimensional regulations. However, the fact that a use may be more profitable or that a structure may be more valuable after the relief is granted are not grounds for relief.

*R.I.G.L. § 45-24-31(61)(i) & (ii).*

[3] Defendants would alternatively submit that, at a minimum, plaintiff implicitly waived this requirement. "'[L]ike any other provision to a contract, time is of the essence may be waived by express agreement or impliedly by conduct that contributes to the delay in performance.'" *Haydon v. Stamas, 900 A.2d 1104, 1112 (R.I. 2006) quoting Fracassa, 814 A.2d at 363 and citing Thompson v. McCann, 762 A.2d 432, 437 (R.I. 2000) ("[E]ven '[a] provision making time of the essence may be waived either expressly or impliedly.'").* As noted in section VI, it is anticipated that plaintiff will argue that defendants have failed to plead waiver as an affirmative defense. While defendants believe the parties' actions is better defined as an oral modification of the Agreement rather than a waiver, to the extent it is viewed as a waiver and necessary, defendants would request that this Court entertain a Motion to Amend their Answer to include the Affirmative defense of waiver. Plaintiff would clearly not be prejudiced by this amendment in light of the fact that they were put on notice of the defense in defendants' Objection to the Motion for Summary Judgment and in fact conducted discovery regarding this issue.

approval. Plaintiff has argued that defendants did not exercise good faith and diligence in their pursuit of the necessary permits for renovating the property. Of course, plaintiff bears the burden of demonstrating that defendants lacked good faith and diligence. *St. Angelo Motors, Inc. v. County Dev. Assocs., LLC*, *2004 R.I. Super. LEXIS 69, 18-19 (R.I. Super. Ct. 2004) citing approvingly* *Habetz v. Condon*, *224 Conn. 231, 618 A.2d 501 (Conn. 1992).* Whether a party has acted with good faith and reasonable diligence must be determined by a consideration of all the facts and circumstances connected with the particular case. *Messler v. Williamsburg City Fire Ins. Co*., *42 R.I. 460, 469 (R.I. 1920).* *See also St. Angelo Motors, Inc. v. County Dev. Assocs., LLC*, *2004 R.I. Super. LEXIS 69, 18-19 (R.I. Super. Ct. 2004) ( "whether or not parties have acted in good faith is largely a factual question").*

In the instant case, defendants submit that there is more than enough evidence to support a finding that defendants were diligent and acted in good faith in their attempt to receive the appropriate permits. In the first instance, it is noteworthy that in support of his claim that defendants did not act in good faith and diligently, plaintiff relies upon the fact that a "variance" application was not filed within three (3) months of the closing. *Plaintiff's Memorandum in Support of Motion for Summary Judgment, at 6.* As explained *infra*, the reason for the delay in the filing began with the discovery that getting a "variance" as contemplated by the Agreement would not have accomplished the desired renovations. The defendants were thus required to engage in the alternative method of obtaining the necessary Town permission. The renovation of the property was further complicated by the fact that the property was a legal non-conforming use that is within 200' of a coastal feature. As outlined above, defendants needed to obtain architectural plans that not only met defendants' needs but also sited the addition in such a way as to avoid the often cumbersome additional regulatory requirements that would have attached if

the renovations were sited within the coastal buffer.

Apparently in support of his contention that defendants were not diligent in the application process, plaintiff claims that the defendants failed to submit plans that complied with the Zoning Ordinances. *Plaintiff's Memorandum in Support of Motion for Summary Judgment, at 5.* In support of this, plaintiff offers no evidence, citation or further argument beyond the bald assertion. Defendants will present evidence that the application was in fact complete. Moreover, contrary to plaintiff's assertion, under the Town of Barrington zoning laws, the zoning official would not have placed an application on the Zoning Board's agenda if the application was deficient and did not comply with the Zoning Ordinances. Most telling, however, is the fact that the Zoning Board did not cite any deficiency in the application as a basis to deny the same. Rather, the Board denied the application based on their determination that the requested renovations did not meet the standards necessary for granting the special use permit.

Plaintiff's allegation that defendants were not diligent and acted in bad faith is further countered by the application of pure common sense to the facts of this case. That is, in light of their knowledge that a "variance" application would not have given them the relief requested but that they could obtain such relief by filing for a permit that was held to a lesser standard, it would have been a breach of good faith and diligence if defendants **had** nevertheless gone ahead and filed a variance application in the three-month period. In the final analysis, if plaintiff's premise were to be accepted, that is, that defendants' actions were intended to result in a denial by the Town and thus reduce the purchase price of the property, defendants could have easily filed the "variance" application within the three-month period and simply await the denial of the same. The fact that they undertook the research and necessary steps to ensure the greatest likelihood that they would receive the appropriate permit to accomplish their goal, in and of itself

demonstrates their good faith and diligence.

## V. PROBABLE LENGTH OF TRIAL

Defendants estimate that trial on this matter will take two (2) to three (3) days.

## VI. ADDITIONAL MATTERS

As noted in Footnote 3, defendants submit that there may be an issue as to whether defendants, by not pleading it as an affirmative defense, waived the argument that plaintiff waived the three-month filing deadline. As discussed *infra,* while defendants believe the parties' actions are better defined as an oral modification of the Agreement rather than a waiver, to the extent it is viewed as a waiver and necessary, defendants would request that this Court entertain a Motion to Amend their Answer to include the Affirmative defense of waiver. Plaintiff would clearly not be prejudiced by this amendment in light of the fact that they were put on notice of the defense in defendants' Objection to the Motion for Summary Judgment and in fact conducted discovery regarding this issue.

Defendants,
By their attorney,

*/s/ Marc DeSisto*

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
Phone: (401) 272-4442
Fax: (401) 272-9937
Email: marc@desistolaw.com

CERTIFICATION

I hereby certify that the within document has been electronically filed with the Court on February 14, 2007, and is available for viewing and downloading from the ECF system.

*/s/ Marc DeSisto*

Marc DeSisto, Esq.