UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JAMES H. REYELT, *Plaintiff,* vs. WILLIAM B. DANZELL and LOUISA F. BEENKER DANZELL, *Defendants.* | C.A. No. 06-057ML |

**DEFENDANTS' POST-TRIAL MEMORANDUM**

## I. INTRODUCTION

There are two (2) issues raised by plaintiff in his attempt to collect $200,000 on the Promissory Note executed by and between the parties and deprive defendants of the agreed upon reduction in value on the Note. First, whether there was an implied duty to execute their "best efforts" to pursue zoning relief and if so, was that duty breached by the defendants. Second, whether plaintiff is entitled to judgment because defendants' breached the three (3) month filing deadline contained in the Promissory Note. Defendants submit that the answer to both questions is "No" and that plaintiff's prayer for judgment should be denied.

## II. PROPOSED FINDINGS OF FACT

1. The property at issue, located at 10-12 Payne Road, Barrington, RI, is comprised of two (2) houses. 12 Payne Road (house A) is located closest to Payne Road and is the smaller of the two homes. 10 Payne Road (house B), located closest to Narragansett Bay, is the larger of the two (2) homes and in fact had been used by plaintiff as the primary residence of his family. *Tr. I, at 6-7 & 9-10.*
2. The property is classified under the Barrington Zoning laws as a legal, non-conforming

use. *Tr. II, at 51.*

3. The specific "non-conforming use" is the presence of two (2) houses on the single lot. *Tr. II, at 51.*

4. Defendants entered a Purchase and Sale Agreement with plaintiff to purchase the property located at 10-12 Payne Rd, for $1,425,000. As part of the Purchase and Sale Agreement, the parties agreed to terms and conditions contained in "Rider A" which reduced the purchase price and thus the value of the Promissory Note executed by the parties at the time of the closing by $100,000 if defendants were unable to obtain a "variance" permitting renovations to the property.

5. The Rider specifically granted defendants their choice of seeking a variance to "remove the present house, build[ ] a new house **and/or** reconstruct[ ] the house with a new configuration." *Plaintiff's Exhibit 3 (Emphasis Added).* By its express and unambiguous terms, Defendants were not required to choose one of these options over the other but were free to decide which option to pursue.

6. Although Rider A, by its express terms, provides that defendants would file an application for a "variance" within three (3) months of the October 30, 2003, closing, this three-month period was intended to facilitate the parties receiving a response from the Barrington Zoning Board within one (1) year of the closing, on or before October 30, 2004.

7. Between the time of the closing and January 2004, defendants believed Attorney Matthew Slepkow, their closing attorney, was working on obtaining the necessary approvals by the Town. *Tr. II, at 27.*

8. When they learned that Mr. Slepkow was not working on obtaining Town approval,

defendants hired Attorney Anthony DeSisto. *Tr. II, at 27.*

9. Defendants subsequently learned that they would also need to hire an architect to facilitate their application before the Barrington Zoning Board and thus hired Jay Littman. *Tr. II, at 18 & 35.*

10. In order to accomplish renovations to the property, defendants were required to obtain a "special use permit" rather than a "variance" under § 185-33 of the Town of Barrington's Zoning ordinance. *Tr. II, at 33-34.*

11. The Barrington Zoning Board does not grant a preliminary hearing or pre-application review of applications for special use permits. *Tr. I, at 58.*

12. Before an application is accepted for filing, the Barrington Building Official must review and approve it as to form. *Tr. I, at 60.*

13. Attorney DeSisto, who has been practicing law in Rhode Island for over twenty (20) years, has extensive experience in zoning matters and has specifically filed for special use permits in the Town of Barrington and appeared before the Barrington Zoning Board over 100 times. *Tr. II, at 31-32.*

14. Mr. Littman has thirty (30) years of architectural experience and has appeared before the Barrington Zoning Board on special use permit applications at least 2-3 times. *Tr. II, at 12-13.*

15. It was the professional opinion of Mr. Littman, and he offered defendants this opinion, that the best course of action would be to pursue a special use permit using a conceptual plan that contained a footprint and massing information before expending funds developing a full design plan. *Tr. II, at 7.* Mr. Littman specifically felt it was "silly" to expend additional funds on preparing a full design plan (detailed interior and exterior)

without knowing if the Barrington Zoning Board would grant approval to build it. *Tr. I, 75-76.*

16. Mr. Littman has successfully obtained a special use permit from the Barrington Zoning Board using the same type of design presentation as prepared on behalf of defendants. *Tr. I, at 77.*
17. Mr. Littman "absolutely" expected that the Zoning Board would approve defendants' application because they had approved similar plans in the past. *Tr. I, at 77.*
18. Attorney DeSisto has likewise successfully obtained the Barrington Zoning Board's approval for a special use permit by submitting information similar to that presented in the instant case on behalf of defendants. *Tr. II, at 39.*
19. Between January 2004 and October 2004, Attorney Harold Jacobi, who held a power of attorney on behalf of plaintiff, spoke to defendants' attorney, Anthony DeSisto on at least 2 or 3 occasions. *Tr. I, at 41.*
20. Between January 2004 and October 2004, Attorney Harold Jacobi, who held a power of attorney on behalf of plaintiff, exchanged emails with defendants' attorney, Anthony DeSisto on at least 3 or 4 occasions. *Tr. I, at 41.*
21. This communication was in addition to the written communication between the two attorneys. *Tr. I, at 41.*
22. On August 18, 2004, Attorney DeSisto informed Attorney Jacobi via correspondence that a special use permit application had been filed and that a hearing would be held on October 21, 2004. *Plaintiff's Exhibit 31.*
23. During the October 21, 2004, hearing two (2) neighbors (one represented by a relative who is a lawyer) appeared at this hearing and objected to the application. *Plaintiff's*

*Exhibit 12.*

24. On October 21, 2004, the Barrington Zoning Board voted to deny defendants' special use permit application. The stated reason for this denial was contained in the December 26, 2004, decision:

> A) the public convenience and welfare will not be substantially served; B) that it will not be in harmony with the general purpose of the ordinance and with the Comprehensive Community plan; C) that it will not result in or create conditions that will be inimical to the public health, safety, morals and general welfare of the community; and D) that it will substantially and permanently injure the appropriate use of the property in the surrounding area or district. *Defendants' Exhibit R.*

25. Attorney DeSisto informed plaintiff of this denial on or about October 27, 2004, within the one-year window provided by the Agreement. *Defendants' Exhibit N.*

26. Attorney DeSisto, on behalf of defendants tendered payment on the Note for the reduced value of $100,000, plus interest, to Attorney Jacobi during a telephone call in which Attorney DeSisto informed Attorney Jacobi that defendants were prepared to release the $100,000 held in escrow by Attorney Markoff's office directly to plaintiff. Attorney Jacobi refused to accept this payment. *Tr. II, at 47.*

## III. Memorandum of Law

### *A. "Best Efforts"*

A plain reading of the Rider Agreement reveals that upon the Zoning Board's denial of defendants' application within one year of the closing, the payment amount of the promissory note would be reduced to $100,000.[1] *Plaintiff's Exhibit 3, at paragraph 4.* The parties also specifically agreed in writing that if the variance is granted within one year, than the payment

---

[1] Paragraph 4 of Rider A specifically states:

> "…or if the variance has been denied and any appeal has expired, then the buyer shall pay over to the seller $100,000 and 5% per ann. of interest on the full value of the note of $200,000 at the time of the denial…"

amount of the Promissory Note is $200,000 (paragraph 3 of Rider A) or, if zoning approval is not granted within one year, in other words, the application is still pending, and the defendants have been diligent and used good faith, then the payment amount of the promissory note is reduced to $100,000 (paragraph 4 of Rider A). As this language makes clear, the parties specifically contracted for the exercise of good faith and due diligence to be a consideration in the event that the application was still pending at the end of one (1) year but excluded such a requirement in the event that the application had been denied. Thus, reading the Agreement in its entirety and giving the words their plain and ordinary meaning it is apparent from the face of the Rider Agreement that the denial of the application automatically reduces the value of the Promissory Note.

In apparent recognition of this limitation contained in the express language of the Agreement, plaintiff argues that defendants possessed an "implied duty" to exercise not only good faith and diligence but also pursue their "best efforts" to obtain zoning relief. Before addressing whether the facts adduced at trial support a finding of a lack of good faith, diligence and best efforts, defendants first note that the parties decision to include a good faith and diligence requirement to that portion of the Rider Agreement addressing when there has been no decision by the Zoning Board but specifically exclude such requirements when the Zoning Board has acted to deny an application speaks volumes as to the parties' intent. When interpreting a contract under Rhode Island law, the Court must "view a contract in its entirety, assigning to its terms their plain and ordinary meanings as the manifestation of the parties' intent." *Haydon v. Stamas, 900 A.2d 1104, 1110 (R.I. 2006).* The Rhode Island Supreme Court "on innumerable occasions has stressed that the clear and unambiguous language in a written contract is controlling as to the intent of the parties and thus governs the legal consequences of the contract

provisions. The intent sought is not some undisclosed intent that might have existed in the minds of the contracting parties, but the intent which has been expressed by the language contained in the contract." Sturbridge Home Builders, Inc. v. Downing Seaport, Inc., *890 A.2d 58, 66 (R.I. 2005) citations omitted.* Thus, unless enforcement is barred by a supervening principle of law or equity or public policy, there is "no reason why the expressed intent of the parties in a contract . . . should not be effectuated." Cosentino v. A.F. Lusi Construction Co., *485 A.2d 105, 107 (R.I. 1984).* As other Courts have found, "in interpreting a contract 'an implication . . . should not be made when the contrary is indicated in clear and express words.'" VTR, Inc. v. Goodyear Tire & Rubber Co., *303 F. Supp. 773, 778 (D.N.Y. 1969) quoting 3 Corbin, Contracts, § 564, p. 298 (1960).* "'The rule, that where the instrument contains an express covenant in regard to any subject, no covenants are to be implied in respect to the same subject, is too familiar to require more than its statement." Id. *citations omitted.*

In the instant case, by the express terms of the contact, the parties had agreed to make good faith and due diligence a requirement for reduction of the price if the application was still pending before the Zoning Board one (1) year from the closing. *Plaintiff's Exhibit 3, at paragraph 4.* The notable omission of this same "good faith and due diligence" requirement when the Zoning Board has denied the application before the one (1) year anniversary of the closing reveals the parties' intent to expressly exclude such a condition from this scenario. Although plaintiff cites case law to the effect that there is an "implied duty", defendants submit that the parties were free to contract otherwise. Id. *("in interpreting a contract 'an implication . . . should not be made when the contrary is indicated in clear and express words'").* The Rhode Island Supreme Court has expressly noted that "as a general rule implied covenants are not favored in the law. This view owes its force to the presumption that when the parties have

entered into a written agreement that embodies their obligations, they have expressed all of the conditions by which they intend to be bound." *Aneluca Associates v. Rocco Lombardi, 620 A.2d 88, 92 (R.I. 1993) (refusing to imply a duty to exercise "best efforts" to maximize the income payable to plaintiff).* Thus:

> "the general rule . . . is that (1) the obligation must arise from the presumed intention of the parties as gathered from the language used in the written instrument itself or it must appear from the contract as a whole that the obligation is indispensable in order to give effect to the intent of the parties; and (2) it must have been so clearly within the contemplation of the parties that they deemed it unnecessary to express it." *Id.*

In the instant case, the plain language of the Agreement demonstrates that the parties did not contract to include a duty of "best efforts" when there has been a denial by the Zoning Board. Rather, as the express language states, in order to be entitled to a reduction in the Promissory Note, defendants need only show that the Zoning Board denied defendants' application. The parties decision to include a duty of good faith and due diligence when there has been no decision but exclude it when the application has been denied demonstrates their clear intent not to impose such a prerequisite to defendants being entitled to a reduction in the Promissory Note. Thus, defendants submit that the amount of the Promissory Note should be determined on the sole fact that the zoning application was denied.

In any event, even if the Court should conclude that an implied duty of "good faith, due diligence and best efforts" overrides the express language agreed to by the parties, defendants submit that the evidence adduced at trial more than demonstrates that defendants have not breached this duty. In their post-trial memorandum, plaintiff primarily focuses on the allegation that defendants failed to exercise their "best efforts" in seeking to obtain zoning relief. Plaintiff specifically argues that the implied duty of "best efforts" is a "more exacting and higher standard than a "good faith" obligation." *Plaintiff's Post–trial Memorandum, at 11-12.* However, in the

cases cited by plaintiff to support this conclusion, the higher duty of "best effort" was expressly contracted for by and between the parties rather than being implied as a matter of law. *See Grossman v. Melinda Lowell, Attorney at Law, P.A., 703 F. Supp. 282, 284 (D.N.Y. 1989); National Data Payment Systems, Inc. v. Meridian Bank, 212 F.3d 849, 854 (3rd Cir. 2000); Mark Technologies Corp. v. Utah Resources International, Inc., 147 P.3d 509, 511 (UT 2006) ("an* express *best efforts clause imposes obligations that are different than those implied under the covenant of good faith and fair dealings") (emphasis added); TSI Holdings, Inc. v. Jenkins, 924 P.2d 1239, 1244 (Kan. 1996); United Telecommunications, Inc. v. American Television & Communications Corp., 536 F.2d 1310, 1316 (10th Cir. 1976); Kroboth v. Brent, 625 N.Y.S.2d 748, 749 (App. Div. 1995); Macksey v. Egan, 633 N.E.2d 408, 410 (Mass. App. 1994).* Notably, plaintiff does not cite to any cases wherein the Court found that where there was an *implied* duty of "best efforts", such a duty entailed a higher standard than the duty of good faith.

In fact, as properly noted by plaintiff, where the law *implies* a duty of "best efforts", as it does in the context of the Uniform Commercial Code, Courts have deemed the standard to be the equivalent to the "good faith" obligations of the parties. *See Plaintiff's Post-Trial Memorandum, at 11, n.2 citing Gestetner Corp. v. Case Equipment Company, 815 F.2d 806, 811 (1st Cir. 1978) and Triple-A Baseball Club Associates v. Northeastern Baseball, Inc., 832 F.2d 214, 225 (1st Cir. 1987) (noting that the "best efforts" standard has been held to be equivalent to that of good faith").* In fact, in *Triple-A Baseball Club Associates,* the First Circuit specifically noted that it had failed to find "any cases wherein the Court had concluded that a party had acted in good faith but did not use its best efforts." *Id.*

Review of the Rhode Island cases that address an "implied duty of good faith, due diligence and best efforts" further demonstrates that there is no distinction between the

requirements. Most notably, in *1800 Smith Street Associates, LP v. Gencarelli, 888 A.2d 46, 56 (R.I. 2000),* after outlining the implied duty the Court went on to conclude that the duty had been violated because the defendants acted in bad faith in fulfilling the conditions called for in the lease. The Court made no effort to distinguish between the bad faith conclusion and the best efforts duty imposed on the defendant. *Id. LaCroix v. Walker, 819 A.2d 1244, 1246 (R.I. 2003) (failure of defendant to even submit a floor plan or apply for a license fatal to claim to have exercised best efforts).*

Of course, plaintiff bears the burden of demonstrating that defendants lacked good faith, due diligence and best efforts. *St. Angelo Motors, Inc. v. County Dev. Assocs., LLC, 2004 R.I. Super. LEXIS 69, 18-19 (R.I. Super. Ct. 2004) citing approvingly Habetz v. Condon, 224 Conn. 231, 618 A.2d 501 (Conn. 1992).* Whether a party has acted with good faith, reasonable diligence and reasonable efforts must be determined by a consideration of all the facts and circumstances connected with the particular case. *Messler v. Williamsburg City Fire Ins. Co., 42 R.I. 460, 469 (R.I. 1920). See also St. Angelo Motors, Inc. v. County Dev. Assocs., LLC, 2004 R.I. Super. LEXIS 69, 18-19 (R.I. Super. Ct. 2004) ("whether or not parties have acted in good faith is largely a factual question").* Of course, simply because a party has been unsuccessful in its attempt to meet a condition precedent does not defeat a finding that they exercised their best efforts to achieve the result.

Although Rhode Island has not specifically defined the scope of what amounts to "good faith" and/or "best efforts", the First Circuit has noted that:

> "[b]reach of a "best efforts" duty has been found where the promisor ceased performance, *United Roasters, Inc. v. Colgate-Palmolive Co., 649 F.2d 985, 990 (4th Cir. 1981), cert. denied, 454 U.S. 1054, 70 L. Ed. 2d 590, 102 S. Ct. 599 (1981),* or engaged in a number of misfeasances and nonfeasances. *Bloor v. Falstaff Brewing Corp., 601 F.2d [609] 614 [(2d cir. 1979)].* But where the promisor encountered difficult problems in carrying out the terms of the contract, no breach of the "best efforts" clause was found. *Western*

*Geophysical Co. v. Bolt Associates, 584 F.2d at 1171-72.*

*Triple-A Baseball Club Associates, 832 F.2d at 226.* This summary is in concert with the decisions issued by the R.I. Supreme Court. *See i.e. LaCroix v. Walker, 819 A.2d 1244, 1246 (R.I. 2003) (failure of defendant to even submit a floor plan or apply for a license fatal to claim to have exercised best efforts).*

In the instant case, plaintiff primarily argues that defendants breached their duty of “best efforts” by deciding not to expend the additional funds and prepare full design plans in support of their special use permit. Plaintiff further maintains that the decision to seek an addition to House B, the primary residence, rather than the alternative option of tearing down House B and adding on to House A, thus allegedly bringing the property into conforming use, further demonstrates a lack of best efforts. Of course, a "best efforts" duty does not strip the promising party of its "right to give reasonable consideration to its own interests." *Bloor v. Falstaff Brewing Corporation, 601 F.2d 609, 614 (2d Cir. 1979).* In fact, a party “may certainly "give reasonable consideration to its own interests" without violating its “best efforts” obligations. *Aeronautical Indus. Dist. Lodge 91 v. United Techs. Corp., 230 F.3d 569, 578 (2d Cir. 2000).*[2] Moreover, as recognized by the R.I. Supreme Court, the requirement to exercise “best efforts” does not require a party to “take all necessary steps to get” the required approval. *LaCroix, 819 A.2d at 1246. See also Foster Wheeler Broome County, Inc. v. County of Broome, 713 N.Y.S.2d 92 (App Div. 2000) (fact that party could have done more is not enough in and of itself to demonstrate lack of “best effort”).* Rather, a party need only take such steps that are reasonably calculated to result in the condition precedent being obtained.

[2] Plaintiff also makes reference to testimony by Mr. Danzell that his family was “in the air” about moving to Rhode Island to support claim that defendants did not exert their best efforts. However, as Mr. Danzell’s testimony made, his family was “in the air” over the move primarily because they were not sure whether they could renovate the house to accommodate their large family. *Tr. II, at 22.*

In the instant case, plaintiff's reliance on the decision to seek an addition to House B rather than seeking the alternative of tearing down House B and adding on to House A to support claim of lack of best effort is misplaced in light of the plain language of the Rider Agreement. More specifically, the Rider Agreement expressly grants defendants the <u>option</u> of pursuing any one of three (3) renovations: "remove the present house, build[ ] a new house **and/or** reconstruct[ ] the house with a new configuration." *Plaintiff's Exhibit 3 (emphasis added).* For plaintiff to now argue that defendants were required to pursue one such option over another in order to fulfill their "best efforts" obligation directly contravenes what plaintiff had agreed to in the Rider Agreement. Plaintiff cannot now claim a lack of best effort when he agreed that defendants were free to choose whichever options fit their needs. *Compare <u>VTR, Inc. v. Goodyear Tire & Rubber Co.,</u> 303 F. Supp. 773, 778 (D.N.Y. 1969) (no cases "have found that there is a breach of an implied covenant of good faith and fair dealing where a party to a contract has done what the provisions of the contract expressly give him the right to do").*

Plaintiff alternatively argues that a lack of "best efforts" can be gleaned from the alleged fact that the defendants submitted an inferior application that allegedly did not even attempt to meet the standards necessary to obtain the requested relief. The problem with this argument, in the first instance, is that it lacks any support by the evidence submitted at trial. First and foremost, the Court was confronted with the testimony of Jay Littman and Attorney Desisto. Mr. Littman testified that he had an absolute expectation that the application would be granted because he in fact had successfully submitted similar applications in the past. *Tr. I, at 77.* Attorney DeSisto, who has appeared before the Board over 100 times on special use permit applications likewise confirmed that the application on its face was sufficient to win approval by the Board and that he had also been successful in obtaining special use permits using the same

scope of evidence presented before the Board on behalf of defendants. *Tr. II, at 39.*

To counter this unequivocal evidence, plaintiff relies on the statements of two (2) Zoning Board's members made during the hearing on the special use permit application. However, the application was denied by a 5-0 vote of the Zoning Board. In rendering this vote, the Board specifically agreed upon the basis for denying the application. The insufficiency of the application was not one of the stated reasons. *Defendants' Exhibit R.* The fact that two out of the five voting members expressed an opinion as to the sufficiency of the application does not change the ultimate decision by Board as voted and agreed upon by the full panel. Moreover, contrary to plaintiff's assertion, under the Town of Barrington zoning laws, the zoning official would not have placed an application on the Zoning Board's agenda if the application was deficient and did not comply with the Zoning Ordinances. *Tr. I, at 60.*

Plaintiff's argument that the application failed to meet the minimum requirements by demonstrating that "the general appearance of the nonconforming use shall not be altered in a way so as to heighten or make mare apparent its nonconformity and, *where possible, shall be improved so as to be more consistent with the surrounding area"* is a red herring. The reason is plaintiff fails to recognize the fact that the "non-conforming use" of the property was the fact that there were two (2) houses on the lot. Providing details as to the planned addition to House B would not demonstrate whether the "non-conforming use" was being heighten or more apparent. Rather, as testified to by Attorney DeSisto, bringing the existing structure, which was undersized as compared to the other houses in the area, more in line with the neighborhood in terms of size would be the best way to "improve[] [the non-conforming use] so as to be more consistent with the surrounding area." *Tr. II, at 51.*

In the instant case, defendants submit that plaintiff have not met his burden of proving

that defendants were not diligent, acted in bad faith and failed to exercise their best efforts in their attempt to receive the appropriate permits. To the contrary, more than enough evidence was introduced at trial to demonstrate such good faith, due diligence and reasonable effort by the defendants. In determining whether defendants exercised good faith, due diligence, and best efforts, the Court must look at the decisions made by the defendants themselves. In this case, when defendants found out that their former lawyer was not pursuing the needed zoning approvals, they immediately hired an attorney with extensive experience in the zoning field and specifically before the Barrington Zoning Board. *Tr. II, at 27 & 31-32.* They likewise hired an architect with over 30 years experience in the field and who had likewise prepared special use permit applications for the Town of Barrington. *Tr. II, at 12-13.* Both of these individuals, based on their collective experience, were confident that the application prepared on behalf of defendants was sufficient to get the approval sought and in fact, both Attorney DeSisto and Mr. Littman had successfully obtained Board approval based on similar applications using the same type of evidence. *Tr. II, at 7 & 39; Tr. I, at 77.* Defendants submit that seeking and obtaining the expertise of Attorney DeSisto and Mr. Littman, in and of itself demonstrates that defendants expended their "best efforts" to obtain the requested relief. It was the unequivocal advice of these two (2) professionals, who possessed extensive experience in the area that defendants relied upon in pursuing the necessary approval. In fact, Mr. Littman specifically rejected plaintiff's argument that additional funds should have been expended to prepare "full design plans" as "silly." *Tr. I, at 75-76.*

Plaintiff's allegation that defendants were not diligent, acted in bad faith and failed to exercise their best efforts is further countered by the application of pure common sense to the facts of this case. That is, in light of their knowledge that a "variance" application would not

have given them the relief requested but that they could obtain such relief by filing for a permit that was held to a lesser standard, it would have been a breach of good faith and diligence if defendants **had** nevertheless gone ahead and filed a variance application in the three-month period. In the final analysis, if plaintiff's premise were to be accepted, that is, that defendants' actions were intended to result in a denial by the Town and thus reduce the purchase price of the property, defendants could have easily filed the "variance" application within the three-month period and simply await the denial of the same. The fact that they undertook the research and took the necessary steps to ensure they would receive the appropriate permit to accomplish their goal, in and of itself demonstrates their good faith, diligence and best effort.

Defendants finally submit that even if plaintiff had proven that defendants' actions violated an implied obligation to exercise their "best efforts," judgment in favor of defendants should nevertheless enter because plaintiff failed to introduce evidence to show that even if defendants had taken additional or alternative steps as suggested by plaintiff, they would have obtained the necessary zoning approval. *National Data Payment Sys. v. Meridian Bank, 212 F.3d 849, 854 (3d Cir. 2000) (summary judgment in favor defendant affirmed where Court concluded that even if plaintiff had demonstrated that defendant's actions amounted to breach of its best-efforts obligation, plaintiff "provided absolutely no evidence that, had [defendants'] behavior been any different, a closing would have occurred by" the desired date*). *SCP Corporation v. BankBoston, 2001 Conn. Super. LEXIS 28 (CN 2001).* Quite simply, plaintiff did not prove that the expenditure of the additional funds or the filing of a different application would have resulted in Zoning Board approval. Such a lack of evidence if fatal to their claim that defendants' failure to expend "best efforts" voids the reduction in the Promissory Note. *Id.*

*B. Three (3) Month Filing Deadline*

Plaintiff alternatively argues that judgment should enter in their favor because defendants breached the Promissory Note by failing to file a "variance" application within three (3) months of the closing. Under Rhode Island law, a breach of a time element is not automatically fatal to a party's performance under the contract. *Fracassa v. Doris, 814 A.2d 357, 362 (R.I. 2003)*. Rather, in order to succeed on his claim, plaintiff must demonstrate that the time fixed for performance is a material part of the contract. *Id.* That being said, under Rhode Island law, "[c]ontract provisions relating to time do not by their mere presence in an agreement make time of the essence." *Safeway System, Inc. v. Manuel Bros., Inc., 102 R.I. 136, 145, 228 A.2d 851, 856 (1967).* Moreover, the party "contending that time is of the essence of the contract has the burden of proof thereon." *Id. quoting Sal's Furniture Co. v. Peterson, 86 R.I. 203, 208, 133 A.2d 770, 773 (1953).* If that party is unable to satisfy his or her burden, then performance within a reasonable time of the contemplated date is acceptable under the contract. *Id.*

In the instant case, defendants submit that it is the one (1) year anniversary of the closing that reflects the time fixed for performance rather than the three-month period to file a "variance" application. In fact, in support of their written Motion for Summary Judgment, plaintiff recognized that the reason for having defendants file their variance application within three (3) months was to facilitate receiving a decision by the Zoning Board within one (1) year from the date of the closing, October 30, 2004. *Plaintiff's Memorandum in Support of Motion for Summary Judgment, at 1 & 5*. According to plaintiff, the reason for requiring defendants to file their application within three (3) months was the recognition that the variance process is often a long and complicated one. According to plaintiff, by placing a three-month window from the

date of closing, plaintiff and defendants were assured of receiving a decision by the Zoning Board within one (1) year of the closing.[3] *Id. at 5.*

Defendants thus submit that while the three-month requirement was meant to facilitate receiving a decision within a year of the closing, in fact, the one (1) year anniversary of the closing was the time frame agreed to by the parties to be material and "of the essence" to the contract. This is further supported by the fact that it is the one-year deadline, not the three-month deadline that is the triggering event for the reduction of the purchase price. Careful reading of the Rider reveals that it provides no penalty or reward associated with this three-month time frame. Most telling is the fact that despite having knowledge that an application was not filed until August, plaintiff did not advise defendants that they viewed the failure to file within three (3) months as fatal to reduction in the value of the Promissory Note. This is despite the fact that Attorney Jacobi spoke to Attorney DeSisto on at least 2-3 occasions and emailed him an equal amount of time in addition to the written correspondence.

In the instant case, there is no dispute that defendants received a decision addressing whether they could renovate the property within one (1) year from the closing. The Zoning Board held a hearing on October 21, 2004, and denied defendants' application. Defendants' attorney relayed the fact that the application was denied to plaintiff on October 27, 2004. Accordingly, even though they were not able to comply with the three-month window for filing the "variance" application, the defendants were able to get a decision from the Zoning Board within the one-year time frame.

Defendants would alternatively submit that even if it is decided that the three-month

[3] Plaintiff, however, erroneously states that requiring the variance to be filed within three (3) months would allow defendants to correct any deficiencies in the application or correct the quantum of evidence to be offered in support of the application in the course of the proceedings. Under the Town of Barrington Zoning Ordinances, an applicant is only given one hearing and is not granted the right to a preliminary or pre-application review.

filing deadline is "of the essence" and a material part of the Agreement, this three-month time frame has been orally modified by the parties and/or waived by plaintiff. "Parties are free to modify a written agreement orally" by demonstrating both subjective and objective intent to be bound by the new contract's terms. *GBM Acquisitions, Inc. v. Adams, 823 A.2d 1121, 1124 (R.I. 2003) citing Fondedile, S.A. v. C.E. Maguire, Inc., 610 A.2d 87, 92 (R.I. 1992).* Moreover, "'like any other provision to a contract, time is of the essence may be waived by express agreement or impliedly by conduct that contributes to the delay in performance.'" *Haydon v. Stamas, 900 A.2d 1104, 1112 (R.I. 2006) quoting Fracassa, 814 A.2d at 363 and citing Thompson v. McCann, 762 A.2d 432, 437 (R.I. 2000) ("[E]ven '[a] provision making time of the essence may be waived either expressly or impliedly.'").* .

In the instant case, as outlined above, plaintiff was made aware by Attorney DeSisto's January 29, 2004 correspondence that obtaining the necessary permission for the renovations required more than filing a "variance" application and inviting plaintiff's attorney to call him to discuss it further. Although Attorney Jacobi testified that he could not recall the substance of his phone conversations during the next nine (9) months with Attorney DeSisto, it follows that if plaintiff was as concerned with the three (3) month filing deadline as claimed in his Post-trial Memorandum, Attorney Jacobi would have raised the issue during one of the many conversations with Attorney DeSisto and discovered that it had yet to be filed. Attorney Jacobi did not offer any explanation as to why, during the phone calls, emails and/or correspondence with Attorney DeSisto in that time frame he would not have informed him that it was simply too late to file the application to gain the benefit of the reduction in the Note because of the failure to comply with the three (3) month deadline.

Defendants submit that the only explanation for this omission (other than the fact that it

was not "of essence" to the contract) is the fact that plaintiff waived the three (3) month deadline, agreeing to modify the contract provision. Haydon, *900 A.2d at 1112 ("time is of the essence may be waived by express agreement or impliedly by conduct that contributes to the delay in performance'");* GBM Acquisitions, Inc, *823 A.2d at 1124 (evidence demonstrating subjective and objective intent to be bound by the new contract's terms sufficient to operate as modification of contract).*[4] As such, plaintiff cannot now rely on the failure to file an application within three (3) months to deny defendants the reduction in the value of the Promissory Note.

## IV. CONCLUSION

For all the reasons cited herein, as well as thus made during closing argument before the court on May 3, 2007, defendants respectfully request that this Court deny plaintiff's claim for relief.

Defendants,
By their attorney,

*/s/ Marc DeSisto*

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
Phone: (401) 272-4442
Fax: (401) 272-9937
Email: marc@desistolaw.com

[4] Defendants alternatively submit that a modification was necessary in part because of the parties "mutual mistake" of requiring defendants to apply for a "variance." More specifically, it was understood by the parties that defendants would seek to expand a legal-non-conforming use by renovating the house. Neither a "use variance" nor a "dimensional variance"[4] would operate to permit such an expansion. Rather, a "special use permit" was the applicable approval needed. By definition, a mutual mistake is one that is "common to both parties wherein each labors under a misconception respecting the same terms of the written agreement sought to be canceled." Leonard v. McDowell, *824 A.2d 1266, 1270 (R.I. 2003).* "An agreement containing a mutual mistake fails in a material respect correctly to reflect the understanding of both parties." McEntee v. Davis, *861 A.2d 459, 463 (R.I. 2004).* A mutual mistake must be proven by clear and convincing evidence. Id. Thus, although defendants submit that although the requirement that defendants file a "variance" application within three (3) months of the closing was not a material element of the Agreement, even if it were, it was orally modified by the parties.

CERTIFICATION

I hereby certify that the within document has been electronically filed with the Court on June 28, 2007, and is available for viewing and downloading from the ECF system. Service on the counsel of record, as listed below, will be effectuated by electronic means.

Gordon P. Cleary – gcleary@vetterandwhite.com

*/s/ Marc DeSisto*

Marc DeSisto, Esq.