UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JAMES H. REYELT, Plaintiff | ) | |
| | ) | C.A. No. 06-0057ML |
| v. | ) | |
| | ) | |
| WILLIAM B. DANZELL and LOUISA F. BEENKER DANZELL, Defendants | ) | |

# PLAINTIFF'S REPLY MEMORANDUM

Because the Danzells' Application Could Not Result in a Special Use Permit, the Danzells' Failure To Seek a Variance, Which Would Have Permitted the Addition They Sought, Highlights Their Breach of the Obligation To Use Best Efforts

On the facts, plaintiff's proof of a lack of best efforts is straightforward. The Danzells had two alternatives in seeking zoning relief: (1) put an addition on the house closest to the water by way of an application for a special use permit allowing expansion of a non-conformity; or (2) remove one of the existing structures, thereby eliminating the non-conformity, leaving at most "a slight variance to deal with, instead of trying to overcome the qualifications and standards you would need to get approval on two structures." (Litman, Tr. I, P. 67 L. 9 – P. 68 L. 15; P. 71 L. 10 – P. 72, L. 4)

To obtain a special use permit, the Danzells would have to establish, to the satisfaction of the Zoning Board, that the general appearance of the non-conforming use would not be altered in such a way so as to heighten or make more apparent the non-conformity. Barrington Zoning Ordinance § 185-74.B. This was problematic.

The members of the Barrington Zoning Board recognized the problem. Their deliberations over the Danzell application focused on § 185-74.B. Architect Litman recognized

the problem as well. As he testified at trial, there are no techniques in architecture that could be used to design the Danzell addition to comply with § 185-74B. (Litman Tr. II, P. 5 L. 1 – L. 7)[1]

Defendants' post-trial memorandum never comes to grips with this problem. Indeed, the Litman testimony is not even mentioned in the post-trial memorandum. Instead, defendants repeatedly invoke good faith, hoping to convince that a finding of good faith automatically results in a conclusion that best efforts were used. As explained below, that argument does not work as a legal matter. And defendants' basic position on the facts is inherently inconsistent.

On one hand, defendants claim they had every expectation that the application would be granted, it had happened "hundreds" of times before, and so on. Yet, at the same time, defendants claim it made no sense, it was "silly," for the Danzells to invest in design drawings showing the visual appearance of what they were proposing, because the application could be "blown out of the water" at the starting line. The Danzells' reluctance to make anything other than the most meager investment in the zoning application reflects the ambivalence of their efforts; they knew they were taking a flyer, action not to be counted on in the least.

It comes to this. The Danzell application submitted to the Barrington Zoning Board could not satisfy the zoning ordinance standard for expanding a non-conforming use. The backup Danzell alternative, removing one of the two houses and expanding the remaining house to 8,000 square feet, would have required only a dimensional variance. Plaintiff and defendants agree on the legal standard for best efforts – "such steps that are reasonably calculated to result in a condition precedent being obtained." Def. Mem. at 11. The Danzells' effort falls short of that standard. A zoning application that cannot satisfy the zoning ordinance standards for relief

[1] Contrary to defendants' assertion, Mr. Litman did not testify he appeared before the Barrington Zoning Board at least two to three times on special use applications. Moreover, he described approval of a "pre-schematic planning study" like the Danzells' as "conceivable." Litman Tr. I, P. 77 L. 13 – P. 78 L. 8; Tr. II, P. 13 L. 10 – L. 13.

is not reasonably calculated to result in the condition precedent being obtained, and is a breach of the obligation of best efforts. Failing to apply for a variance by which the Danzell addition would have been approved – as architect Litman testified – is equally a breach of the best efforts obligation.

The Inclusion of "Good Faith and Due Diligence" in Rider A, Paragraph 4 Proves Nothing

Defendants' argument that use of the phrase "good faith and due diligence" in paragraph 4 of Rider A, and the absence of such language in paragraph 3, "reveals the parties' intent to exclude" a best efforts obligation simply does not hold up. Common sense indicates that if the parties intended that defendants would not have to use best efforts to obtain zoning relief, that is what would have been explicitly stated. Best efforts was an understood premise. The basic equity of the implied duty is that when parties agree that one of them will have a conditional obligation, best efforts is something plainly in the contemplation of the parties. By defendants' reasoning, the absence of "good faith and due diligence" language in paragraph 3, but the presence of that language in paragraph 4, means the Danzells would not even have an obligation to pursue zoning relief in good faith. That hardly makes sense.

Whether a Higher Duty or Not, the Duty of Best Efforts Is
Not the Equivalent of the Duty of Good Faith and Fair Dealing

Defendants claim that plaintiff has not cited a case where the implied duty of best efforts has been called a duty entailing a higher standard than the duty of good faith. The claim is inaccurate. In TSJ Holdings, Inc. v. Jennings, 924 P.2d 1239 (Kan. 1996), cited by plaintiff, the court observed:

> Another term that courts often supply is one imposing a duty of "best" or "reasonable" efforts. Such a duty requires a party to make such efforts as are reasonable in light of that party's ability

> and the means at its disposal and of the other party's justifiable expectations. Although the scope of this duty is no better defined than the scope of the duty of good faith, it is clear that the duty of best efforts is more onerous than that of good faith. 924 P.2d at 1250, quoting 2 Farnsworth on Contracts § 7.17 p. 314 (1990) (emphasis added).

Obviously, contractual terms courts supply are terms courts find implicit in an obligation. And, whether higher or equal, the implied obligation of best efforts and the implied covenant of good faith and fair dealing are different standards of performance. Were the standards the same, the Rhode Island Supreme Court would not, on three occasions, describe the obligation imposed as imposed by law in a conditional sales contract as a duty of "good faith, diligence and best efforts to bring about th[e] happening." 1800 Smith Street Associates, LP v. Gencarelli, 888 A.2d 46, 56 (R.I. 2005); LaCroix v. Walker, 819 A.2d 1244, 1246 (R.I. 2003); Bradford Dyeing Association, Inc. v. J. Stog Tech GmbH, 765 A.2d 1226, 1237 (R.I. 2001). Indeed, it seems fairly clear that the standard of performance the law imposes on a party obligated to perform under a conditional sales contract is threefold and cumulative. Good faith, diligence and best efforts are separate elements of one duty. Otherwise, the Rhode Island decisions could simply posit good faith as the sole standard and leave it at that.

Defendants Rely on Cases that Are Not on Point

Referring to a case plaintiff cited in his principal brief, defendants appear to argue that the Uniform Commercial Code "implies a duty of best efforts." Def. Mem. at 9. The UCC provision considered in Gestener Corp. v. Case Equipment Co., 815 F.2d 806, 810-11 (1st Cir. 1987), actually prescribes a best efforts obligation, unless the parties contract otherwise. The Gestener court described this best efforts duty as "a good faith obligation ... to use best efforts to supply the goods and ... to promote the sale." The court also observed that the "good faith"

obligation is not the same for a requirements contract and an exclusive dealing contract. 815 F.2d at 811. The decision in Triple-A Baseball Club Assn. v. Northeastern Baseball, Inc., 832 F.2d 214 (1st Cir. 1987), which referred to Gestener as equating best efforts and good faith, failed to note the two cannot be equivalents under the UCC. The UCC permits parties to disclaim the best efforts obligation, UCC § 2-306, but not to disclaim the obligation of good faith, UCC § 1-102(3). If best efforts and good faith were the same, the UCC would treat them the same way.

Defendants also note the statement in the Triple-A decision that the Triple-A court was unable to find a case in which a court determined a party had acted in good faith but did not use best efforts. In Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Co., 281 N.E.2d 142 (N.Y. 1972), the court affirmed the lower court's finding that there was a breach in the defendant's failure "to use its best efforts ... [but no] breach of the implied condition of fair dealing." 281 N.E.2d at 145. This is the very result that the Triple-A court was unable to find.

Defendants' reliance on Aneluca Associates v. Lombardi, 620 A.2d 88 (R.I. 1993), is misplaced. In Aneluca, the defendants were lessees under a ground lease which provided for a base rent or 3 percent of the lessee's gross sales, whichever would be greater. The defendants' business sustained a fire, and defendants ceased business operations but continued to pay the base rent. The Rhode Island Supreme Court ruled the lease agreement "imposed no obligation to operate a business continuously on the leased premises in order to generate income pursuant to the 3 percent override provision." 620 A.2d at 91. And because the base rent provided in the contract "was substantial," the Supreme Court ruled there was "no duty to generate additional income, express or implied." 620 A.2d at 93.

The language defendants Danzell quote from Aneluca applies to "lease contracts, where ... there is a provision for a guaranteed minimum rent and a further provision for a

percentage rental." 620 A.2d at 92. The two-part test defendants rely on is "[t]he general rule enunciated in th[o]se decisions considering percentage lease contracts..." Id. In such cases, the courts imply a covenant to occupy premises and generate percentage rentals only where there is no minimum rental, or the minimum rental is so low as to be nominal. Id.

Aneluca is not this case, and has nothing to say that bears on this case. In this case defendants Danzell had an affirmative, explicit obligation to seek zoning relief, unlike the lessee in Aneluca, who had no obligation to operate a business. Moreover, in this case, the law respecting the implied duty to use best efforts does not depend on the rule explained in Aneluca, but in the rule announced and explained in 1800 Smith Street Associates, supra, LaCroix, supra, and Bradford Dyeing, supra.

Defendants claim 1800 Smith Street Associates, LP v. Gencarelli, 888 A.2d 46, 56 (R.I. 2000), made no effort to distinguish between bad faith and a failure to use best efforts, so the two must be the same. Not so. The court had no need to distinguish between good or bad faith and best efforts. In 1800 Smith Street, the trial court found defendant had acted in bad faith in failing to give notice of a claimed default. Defendant appealed that finding of bad faith. Not surprisingly, the Supreme Court discussed the duty of good faith, and did not discuss the duty of best efforts, because best efforts was not an issue on appeal and had no bearing on the appeal.

Finally, defendants cite National Data Payment Systems, Inc. v. Meridian Bank, 212 F.3d 849 (3rd Cir. 2000), to the effect that plaintiff Reyelt must show defendants would have obtained zoning relief if they had exercised best efforts. Factually, the National Data case is not relevant, because the result of the alleged failure to use best efforts – the failure to close a business acquisition – was shown by the record to "be the result of [plaintiff's] own evaluation procedures." 212 F.3d at 854. Thus, the condition that failed to occur was entirely the

responsibility of the party claiming a lack of best efforts. In this case, the condition that failed to occur was entirely the responsibility of defendants Danzell.

Moreover, the National Data decision cites no authority for the proposition that a plaintiff showing a lack of best efforts must also show that the condition would have eventuated if best efforts had been employed. In contrast, the Rhode Island decisions on the best efforts obligation clearly state that if a breach of the best efforts obligation is established, the condition is deemed waived by the breaching party's conduct. See, e.g., Bradford Dyeing, 765 A.2d at 1238 ("if one party ... prevents the happening or performance of a condition precedent ... that action eliminates the condition precedent").

## CONCLUSION

For all of these reasons, plaintiff respectfully prays for judgment in his favor.

/s/ Gordon P. Cleary
Gordon P. Cleary, No. 1948
VETTER & WHITE
Attorneys for Plaintiff
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX
gcleary@vetterandwhite.com

Dated: July 6, 2007

## CERTIFICATE OF SERVICE

To:

Marc DeSisto, Esq.
DeSisto Law Offices
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563

I hereby certify that I electronically filed this Reply Memorandum on July 6, 2007. The Reply Memorandum is available for viewing and downloading from the Court's Electronic Case Filing system. Service on the above-identified counsel of record will be effectuated by electronic means and by mailing first class mail, postage prepaid, to non-registered parties.

/s/ Gordon P. Cleary